## AUSTIN TERM, 1901.

### G. W. PICKETT v. THE STATE.

#### No. 2110. Decided April 24, 1901.

**1.—Murder—Second Trial for Manslaughter Where Evidence Supports Both Murder and Manslaughter.**

On a trial for manslaughter, where on a previous trial defendant had been acquitted of murder and convicted of manslaughter, and a new trial granted, and the evidence on the second trial authorized a conviction of either murder or manslaughter; Held, the previous acquittal of murder was not a bar to a second prosecution for manslaughter, nor was it an offset to manslaughter; and a conviction on the second trial could be had on evidence supporting manslaughter although there might be evidence supporting murder in the second degree.

**2.—Same.**

On a trial for murder, where defendant has been acquitted of murder and convicted of manslaughter, he can not use the acquittal of murder as a bar to a subsequent prosecution for the manslaughter.

**3.—Former Jeopardy—When Not Available.**

A plea of former jeopardy can not be raised by motion in arrest of judgment. Henderson, J., dissenting.

Appeal from the District Court of Comanche, on a change of venue from Brown. Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Ella Foster, by shooting her with a gun on the 7th day of June, 1895, in Brown County. Appellant had been convicted of manslaughter in Brown County, but a new trial was granted and the venue changed thereafter.

The following substantial statement of the essential facts in the case is taken from appellant's brief, to wit: W. A. Foster testifies that there had been some trouble between him and Pickett about land fourteen years ago, but they made friends, and soon after some trouble about dogs, but they again made friends. Appellant testified as to these difficulties and their adjustment the same as did Foster, and also as to threats by Foster, the last of which was twelve years ago, and said: "After this we were friends, not very intimate." Also, "My feelings toward W. A. Foster at the time of the difficulty were not very good, and not very

bad." W. A. Foster testified that E. Brooks came to his field on the day of the difficulty and told him that appellant said that he, Foster, had told appellant that said Brooks had talked about appellant's family. Witness denied having made such statement to appellant. At the request of said Brooks witness agreed to see appellant as he passed by his field on his road home that evening, and talk the matter over peaceably. That returning home that evening, having his son, Will Foster, his wife, and daughter, Ella Foster, in the wagon with him, Brooks met them about 100 yards from where appellant was in his field. His exact language was: "I drove on and turned out of the road opposite defendant, and stopped the wagon, and standing up in front of the wagon I said: 'Mannie Brooks, what is it you want me to say?' He replied: 'Pickett says you told him that I had been talking about his family.' I said to defendant: "George Brooks never said anything to me disrespectfully of your family.' Defendant said something to me I did not understand and started to reiterate what I said when defendant stooped down and picked up his gun and fired at me. Will said: 'Jump out or he will kill us all.' About this time defendant fired again. I jumped out and in doing so fell, but held on to the lines. I heard several other shots and then I heard my wife say that Ella was killed. The first shot was fired by defendant. The second shot was fired by Johnnie Pickett, defendant's son, who was just inside of the field about twenty yards west of defendant. The third shot was fired by defendant, and the fourth shot by Will Foster with a shotgun from behind the wagon. The witness further stated, when Ella Foster was shot through the head, and after she had fallen, a Winchester ball passed through the wagon bed and through Ella's body. Johnnie Pickett was shooting with a Wincester."

Will Foster's testimony as to the transaction was in substance the same as that of his father.

Mrs. Foster testified that when they drove up, Will Foster's gun was lying in the bottom of the wagon and remained there until after appellant fired the first shot.

Jim Foster testified that he never heard anyone call out to Will Foster just before the shooting, and that he never heard appellant say anything before or during the shooting.

*Jenkins & McCartney,* for appellant.—Appellant did not claim that he shot at the Fosters because of sudden passion, nor that there was any sudden passion, nor that there was any adequate cause to excite in him anger, rage, resentment or terror, but he claimed that he shot solely in self-defense. The other evidence in the case goes solely to the impeachment of W. A. and Mrs. Foster, or to the corroboration of appellant's claim of self-defense. Not a word of it points to manslaughter by showing sudden passion. Certainly it does not tend to show adequate cause. Scoggins v. State, 32 Texas Crim. Rep., 11; Parker v. State, 22 Texas Crim. App., 106; Fuller v. State, 30 Texas Crim. App., 562; Conde v. State, 35 Texas Crim. Rep., 102.

The court erred in refusing to give special charge number 2 asked by defendant to the effect that if the jury found from the evidence that the defendant was guilty of murder in the second degree they would acquit him, he being on trial for manslaughter, and having been tried and acquitted of murder in the first and second degree; the evidence for the State showing murder in the second degree and not manslaughter, and the evidence for the defendant showing self-defense and not manslaughter.

The court should charge the jury upon every issue of fact raised by the evidence. The charge requested and refused is as follows: "You are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant shot at either Will Foster or W. A. Foster, not actuated by sudden passion aroused by adequate cause, as the same is defined in the principal charge, and if you further believe from the evidence beyond a reasonable doubt that the shooting at either or both of said Fosters was not in defendant's self-defense, as defined in the principal charge, and if you believe that in so shooting at either of said Fosters he killed Ella Foster, then such killing would not be manslaughter, the offense for which the defendant is being herein prosecuted, but would be murder in the second degree, and if you so believe from the evidence beyond a reasonable doubt, you will acquit the defendant of the charge in this case, and say by your verdict that you find the defendant not guilty of manslaughter." Turner v. State, 54 S. W. Rep., 580; White's Code Crim. Proc., art. 715. See authorities cited, sec. 801, subdiv. 2, under said article.

We think that if the evidence conclusively showed that appellant was guilty of any offense, it was murder in the second degree, and not manslaughter. The jury might have thought otherwise had this issue been submitted to them. However this might have been, the evidence raised the issue and it was the duty of the court to submit the issue, especially when requested so to do. This was settled in the case of Turner v. State, supra.

Now, it is not and can not be disputed that the evidence in this case fairly raised the issue of a killing upon malice aforethought; and if so, and it be the law as held in the Parker case, 18 Texas Criminal Appeals, 107-9, that the jury ought not to find the defendant guilty of murder, and, by calling it manslaughter, punish him for an offense for which he has been acquitted, we say that if this be the law, as it undoubtedly is, then it is the right of the defendant, in a case where the facts raise the issue, to have the jury so instructed. This we think disposes of this issue.

*Rob't A. John,* Assistant Attorney-General, for the State.—The three propositions discussed in appellant's brief, and upon which this case must turn, are the following:

1. Did the court err in not granting appellant's motion in arrest of judgment because of the former jeopardy claimed to have existed by

reason of mistrial and discharge of the jury in the District Court of Brown County, which appellant by his own testimony shows was without his consent and in his absence. Upon this the State submits the two following propositions: (1) The mistrial or manner in which the jury was discharged was the first trial had upon this indictment occurring in the District Court of Brown County on January 6, 1896; that subsequent to said trial appellant, on May 26, 1898, was again tried and at that trial interposed no special plea as to jeopardy, and was convicted of manslaughter, and the court, upon the application by defendant, granted him a new trial. That subsequently, on December 11, 1898, appellant was again tried in the District Court of Brown County, and upon the overruling of his motion for new trial prosecuted his appeal to this court, and this court granted him a new trial upon his application, and at that trial there was not presented by appellant any plea of jeopardy. That appellant having failed in two instances, as well as in the trial of the case from which this appeal was prosecuted, to present his special plea of former jeopardy, and having made and obtained the granting of two motions for new trial, that he by that act waived all issues as to jeopardy occurring anterior to the making and granting of the two former motions for new trial. In other words, that, upon appellant applying for and obtaining a new trial upon other issues, he by that act waives all rights to the issue of jeopardy occurring anterior to his successful securing of a new trial asked and applied for by him. Maines v. State, 37 Texas Crim. Rep., 618; Sterling v. State, 25 Texas Crim. App., 716; 1 Bish. Crim. Law, sec. 1003; 11 Am. and Eng. Enc. of Law, 959. (2) The State further submits the plea of autrefois convict, and autrefois convict having been made by the statute a special plea, is based upon Bill of Rights, section 14, Constitution, and is merely a procedure indicated by which the specific pleas of former conviction and former acquittal may be appealed to by a defendant. That outside of this statutory plea, and by reason of this section of the Bill of Rights, the authorities have engrafted the further plea of former jeopardy, which is purely constitutional in its nature, but which is nevertheless deemed and termed a special plea. The State submits: (a) That former jeopardy as well as former conviction and acquittal predicated on the same are kindred pleas; that they are special pleas that must be specially pleaded, the burden of proof being upon appellant to show the truth of the facts contained in the same. Pizano v. State, 20 Texas Crim. App., 139; O'Connor v. State, 28 Texas Crim. App., 288; Jones v. State, 13 Texas Crim. App., 1. (b) That the plea of former jeopardy, former acquittal and former conviction, being special pleas in their nature, must be presented by appellant in limine, and can not be appealed to in motion in arrest or motion for new trial. 11 Am. and Eng. Enc. of Law, 964; White's Code Crim. Proc., sec. 19, subdiv. 1; O'Connor v. State, 28 Texas Crim. App., 288.

Appellant insists that having been acquitted of murder in the first and second degrees, and being on trial only for manslaughter, he was

entitled to a charge to the effect that if the jury found him guilty of a culpable homicide upon either express or implied malice, that then, he being only tried for manslaughter, was entitled to an acquittal.

The State submits that the same facts which will demonstrate murder in the first degree will demonstrate more cogently murder in the second degree, and will demonstrate still more cogently manslaughter. This is demonstrated from the fact that, under an indictment for murder a party can be convicted of manslaughter, and yet the indictment charging him with murder need not allege specifically that the homicide was voluntary and under the influence of sudden passion. It is sufficient if it be alleged that it was committed with malice aforethought because malice aforethought embraces within it the idea that the homicide was committed voluntarily and under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law.

If the allegation of murder in usual terms embraces within it all the elements of manslaughter, then the proof of murder of necessity must embrace within it the proof of manslaughter. To hold otherwise would place the law in this anomalous condition: a man, as in the case at bar, could be charged with murder, tried and convicted of murder in the second degree, and new trial granted, tried again and convicted of manslaughter, a new trial granted, and as in this case, if the rule be correct as invoked by appellant, if the murder be one of sudden passion aroused by a cause which is inadequate; or if the issue be whether or not the cause is adequate.

It is insisted that, if a person be charged with manslaughter and convicted, that the very fact that a plea of jeopardy as to that conviction would be a bar to a charge of murder in the first or second degree demonstrates the consistency of the State's position, that proof of the higher offense will sustain a verdict upon the charge of the lower. It has been held in this State that, where a person is charged with an aggravated assault and the proof shows him guilty of aggravated assault and nothing else, and the jury finds him guilty of simple assault, the verdict will sustain the judgment. In other words, although the jury convicts of the lower degree, when not only the higher is charged but proven, it is beneficial to defendant and he will not be heard to complain. Foster v. State, 25 Texas Crim. App., 543; Singleton v. State, 50 S. W. Rep., 951; Ross v. State, 45 S. W. Rep., 808.

Upon an inspection of the American and English Encyclopedia of Law, volume 9, page 555, it is stated: "As a general rule that the only distinction between the degrees of culpable homicide is merely as affecting the graduation of punishment, or, to quote it literally, 'as these degrees of murder are usually defined, neither of them differs from the common law murder, but courts have repeatedly said that the apparent object of this statutory discrimination is merely a graduation of the punishment according to the degree of malice and malignity.' It cites to sustain this text a great many authorities. This authority, on page

579, Id., in reference to manslaughter, uses the following language: "It has been held that it is no defense to an indictment for manslaughter that the evidence shows the homicide to have been committed with malice aforethought, and therefore to have been murder, but that the defendant may be convicted of manslaughter as charged in the indictment." If this is a correct rule as to manslaughter at common law, it becomes more pertinent because our statutory manslaughter is nearer akin and is more allied to murder in the first and second degree than manslaughter under the common law.

DAVIDSON, Presiding Judge.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

On a former trial he had been acquitted of murder and convicted of manslaughter. On appeal, the judgment was reversed. On the trial which resulted in this conviction, the issue of manslaughter alone was submitted as a predicate for conviction. This is not a case where the evidence shows only murder, excluding the issue of manslaughter; therefore, it is not necessary to discuss the case from that standpoint. There was evidence on the last trial, as in the former, which would have authorized a conviction of murder, or manslaughter. Appellant requested the court to instruct the jury, if they believed from the evidence appellant was guilty of murder in the second degree, they should acquit of manslaughter. This being refused, exception was reserved and error is here assigned. The effect of appellant's contention is that an acquittal of murder could operate as a bar to the conviction of manslaughter under the same indictment, though there was evidence supporting this latter or less offense. It has been uniformly held, where a party has been acquitted of the higher degree or grade of offense, that he can not again be convicted of that grade or degree. But, it has been as uniformly held, that such acquittal does not operate as a bar to the prosecution of the inferior degree of such offense. Appellant's contention is that the jury should offset manslaughter with the acquittal of murder; and therefore acquit if they find from the evidence that defendant is guilty of the higher offense; both of which are but grades of the same offense and triable under the allegations of the indictment. We can not assent to this proposition. In Parker's case, 22 Texas Criminal Appeals, 105, the court instructed the jury that they could use the testimony showing murder as a predicate for the conviction of manslaughter, although the party had been previously acquitted of murder. That is, appellant could not be again tried for murder when he had been once acquitted of that offense. That case rests upon that proposition. Other cases are numerous to the effect that, where there is evidence of a higher grade of offense, a conviction will not be disturbed for the inferior degree, though there was no testimony showing the inferior degree. These are expressly recognized and sanctioned in Parker's case. Fuller's case, 30 Texas Criminal Appeals, 559, is authority for holding that a conviction for

murder in the second degree can be had where the evidence shows murder in the first degree. This seems to be predicated upon the idea that malice is a constituent element of both degrees of murder. The Fuller case was reaffirmed in Conde case, 35 Texas Criminal Reports, 98.

Let us look at it from another angle of view. Suppose, under an indictment charging murder, the State elects to try the accused only for manslaughter, dismissing the prosecution as to murder; and, on the trial, there is testimony which would authorize a conviction for murder in either degree or manslaughter. Now, if appellant's theory is correct, and his contention sound, the court would be required to instruct the jury, if they believed the evidence of murder, they should acquit of manslaughter. If this position is the correct one, then, in all cases involving grades of offense, as in homicide, there should be evidence of a higher grade than that upon which the conviction is sought, defendant would be entitled to an acquittal, by reason of that evidence, however full and strong the testimony might be with reference to the grade for which he is being tried. It is not necessary to discuss this question. The court was correct in refusing the requested instructions, and did not err in submitting alone the issue of manslaughter. Appellant had been acquitted of murder and could not use that acquittal as a bar to the prosecution for manslaughter. Scroggins v. State, 32 Texas Crim. Rep., 71. Subsequent to the trial appellant, by motion in arrest of judgment, sought to raise the question of jeopardy. This comes too late under all the authorities in this State; and it is not necessary to enter into a discussion of the question. The judgment is affirmed.

*Affirmed.*

BROOKS, JUDGE.—I concur in the conclusion reached.

HENDERSON, JUDGE (dissenting).—I do not agree to the views of a majority of the court as expressed in the opinion of the presiding judge, and as the question involved is one of some importance, and in my opinion overruled our decisions on this subject, I will state my reasons for dissenting. Appellant was indicted for the murder of Ella Foster. On a former trial he was convicted of manslaughter, which was an acquittal of the higher grades of the offense; but a new trial was granted, and, at the September term, 1900, of the District Court of Comanche County, where the case was pending on a change of venue, appellant was again tried under the same indictment for manslaughter, and was convicted for that offense. It was insisted at the trial that the evidence adduced did not show manslaughter but murder; and that appellant having theretofore been acquitted of murder he could not again be convicted for said offense. And the following charge was asked on the subject: "You are instructed that, if you believe from the evidence beyond a reasonable doubt, that defendant shot at either Will Foster or W. A. Foster, not actuated by sudden passion aroused by adequate cause, as the same is defined in the principal charge; and, if you further believe from

the evidence beyond a reasonable doubt that shooting at either or both of said Fosters was not in the defendant's self-defense, as defined in the principal charge; and if you further believe that in so shooting at either of said Fosters he killed Ella Foster, then such killing would not be manslaughter, the offense for which defendant is prosecuted, but would be murder in the second degree; and if you so believe from the evidence beyond a reasonable doubt, you will acquit the defendant of the charge in this case, and say by your verdict that you find defendant not guilty of manslaughter." The refusal to give this charge is assigned as error.

I can not agree with the majority of the court that the evidence of this last trial showed a case of murder or manslaughter. On the contrary, the testimony of the State exhibited a clear case of murder in the second degree; while appellant's testimony tended to show a case of self-defense. But, concede there was testimony tending to show manslaughter, still the question of jeopardy was one for the consideration of the jury, and the court could not deprive them of the right to try this issue. Nor do I agree with the court, that the question here is, whether under an indictment for murder, which includes degrees of the offense, a party can be convicted of a lesser degree, though the evidence may show him guilty of a higher degree. This doctrine is too well settled by our decisions to be controverted. Bigham v. State, 4 Texas Crim. App., 233; Powell v. State, 5 Texas Crim. App., 234. But it is equally well settled, both by our statutes and decisions, that a conviction of a lower grade of the offense acquits of the higher grades. See article 762, Code Crim. Proc.; Robinson v. State, 21 Texas Crim. App., 160; Wright v. State, 35 Texas Crim. Rep., 158; Hooper v. State, 42 S. W. Rep., 398; Bish. Crim. Law, sec. 1004, subdiv. 2. The question here is simply one of jeopardy. That is, appellant having formerly been acquitted of murder of both the first and second degrees, when he was again put on trial for manslaughter only, and the proof showed that he was not guilty of manslaughter but guilty of murder; he could not be convicted under the name of manslaughter for the murder of which he had been acquitted. Scroggins' case, 32 Texas Criminal Reports, 71, cited in the majority opinion, does not sustain it. On the contrary, the very charge here refused was given in that case. And the court say: "There was evidence from which the jury could infer that appellant killed deceased while under a passion produced by a blow given by deceased. While it is true there is strong evidence of antecedent malice upon which a finding of murder of the first degree would be sustained, yet the jury could readily refer the passion to the new provocation, and convict of manslaughter." Now, if it be conceded there was evidence in this case tending to show manslaughter, yet there was also evidence tending to show it was murder and not at all manslaughter, if the matter of jeopardy had been left to the jury under proper instruction, then there could be no complaint. In Parker v. State, 22 Texas Criminal Appeals, 106, Judge Willson, in speaking for the court, in a case presenting this ques-

tion, uses the following language: "It seems to us that, as the defendant has been acquitted of murder, he can only be tried and convicted of manslaughter. If the evidence shows that he is guilty of murder, he can not be convicted of that offense, because he has been tried therefor and acquitted. He can not be convicted of manslaughter, because, if guilty of murder, he is not guilty of manslaughter, the two first offenses being essentially different, although grades of homicide. It is true that when the indictment charges murder, and the defendant is on trial for that crime, he may be convicted of any grade of homicide, and if convicted of a lower grade than murder in the first degree, the conviction will not be set aside because the evidence proves that he is guilty of a higher grade than the one of which he is convicted." And see Fuller v. State, 30 Texas Crim. App., 562; Conde v. State, 35 Texas Crim. Rep., 102; Turner v. State, 41 Texas Crim. Rep., 329.

It seems to me that the doctrine announced by these cases is sound, and is too well established to be lightly overturned.

The Constitution (section 14 of article 1) guarantees a party against a second trial and conviction for the same offense of which he had been formerly acquitted. And to hold that appellant, who had been acquitted of murder, could again be placed in jeopardy for that offense under the name of manslaughter, would be to deprive him of his plea of jeopardy altogether. Or if it be conceded that there was testimony tending to show him guilty of manslaughter, but there was also testimony tending to show he was guilty of murder and not of manslaughter, for the court to refuse to submit his plea of former jeopardy to the jury, was to usurp the functions of the jury, thus denying to him the right of that tribunal to pass upon the facts under his plea of jeopardy. Grissom v. State, 19 Texas Crim. App., 504; Woodward v. State, 42 Texas Crim. Rep., 188.

It does not occur to us that the position assumed in the opinion by the presiding judge can be reconciled with the decisions of this court on the subject. If a contrary doctrine is established, these decisions should be expressly overruled and the new doctrine announced. For the reasons stated, I do not concur in said opinion.

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]