FRED BURNETT v. THE STATE.

No. 3887. Decided May 20, 1908.

**1.—Murder—Manslaughter—Charge of Court—Self-Defense.**

Where upon trial for murder the evidence showed that defendant could have. been rightfully convicted of murder in the first or second degree, yet that it also raised the issue of manslaughter; that some two or three hours before the homicide the parties had had an altercation; that the deceased wrongfully accused the defendant of improper conduct; that deceased was the stronger and said he was going to get a gun and kill defendant, of which defendant was advised; that defendant was greatly excited; that deceased had a pocket-knife in his hand, etc., the court correctly charged on manslaughter as applicable to these facts; as well as on self-defense.

**2.—Same—Charge of Court—Murder—Manslaughter.**

Where upon trial for murder the defendant had been previously acquitted of murder and convicted of manslaughter (being granted a new trial) the court correctly refused requested charges defining murder in the first and second degree, the effect of which was to give the jury an opportunity to acquit the defendant of all crime, including manslaughter, if the jury concluded that the defendant was guilty of murder.. Following Pickett v. State, 43 Texas Crim. Rep., 1.

**3.—Same—Definition of Degrees of Homicide.**

Murder in the first degree, murder in the second degree and manslaughter are not in the strictly legal sense different offenses, but merely different grades of the same offense, and are all species of unlawful homicide; and under article 817, Code Criminal Procedure, the defendant may be convicted for an inferior grade of homicide although he has been acquitted of the higher grade.

**4.—Same—Argument of Counsel—Allusion to Former Conviction.**

Where upon trial for murder the State's counsel, after the conclusion of the evidence, stated to the court that he was going to read a reported case from the books, in which like the one on trial the defendant had been tried and acquitted of murder and convicted of manslaughter and the case was reversed; and it was only by inference that the jury could have understood that the defendant had theretofore been convicted of manslaughter, the same was not such an allusion to the defendant's former conviction as to justify a reversal.

**5.—Same—Charge of Court—Adequate Cause—Former Provocation.**

Where upon trial for murder the evidence showed a former provocation some two hours before the homicide, the court correctly charged on the question of adequate cause that the jury had the right to consider any former provocation, and all other facts and circumstances after, or at the time of the homicide.

**6.—Same—Continuance—Cumulative Testimony.**

Where the absent testimony, upon trial for murder, if produced, would have been only cumulative, and was not of such a substantial character as to have justified further delay, the application for continuance was correctly overruled.

**7.—Same—Evidence—Animus of Witness.**

Where upon trial for murder the court refused to permit the defendant's witnesses to testify that the State's witnesses were prejudiced and hostile to defendant, and the record showed that the witnesses, if they had been permitted to testify, would have testified to other transactions from which they drew certain conclusions as to such hostile feelings, and that they did not know of such hostile attitude of the State's witnesses, there was no error.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben. H. Denton.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The facts of this case appear substantially in the opinion of the court upon a former appeal; Burnett v. State, 51 Texas Crim. Rep., 20.

The opinion states the case.

*Thurmond & Steger, B. B. Sturgeon* and *Mark McMahon,* for appellant.—On question of showing animosity of witnesses: 2 Enc. of Evi., pp. 406–415; Wharton's Criminal Evidence, 8 Ed., 477; Surrell v. State, 29 Texas Crim. App., 321; Tow v. State, 22 Texas Crim. App., 175; Watts v. State, 18 Texas Crim. App., 381; Daffin v. State, 11 Texas Crim. App., 76; Blunt v. State, 9 Texas Crim. App., 234. On question of argument of counsel: Art. 823, White's Code Crim. Proc. On question of adequate cause: Hayman v. State, 83 S. W. Rep., 204; Cole v. State, 48 Texas Crim. Rep., 429; 88 S. W. Rep., 341; Barbee v. State, 50 Texas Crim. Rep., 426; 97 S. W. Rep., 1058; Stanton v. State, 42 Texas Crim. Rep., 269; Herrington v. State, 63 S. W. Rep., 562. On question of threats and self-defense: Bonner v. State, 29 Texas Crim. App., 223; Gonzales v. State, 28 Texas Crim. App., 130. On the question of manslaughter: Abbata v. State, 51 Texas Crim.

Rep., 510; 102 S. W. Rep., 1125; Kannmacher v. State, 51 Texas
Crim. Rep., 118; 101 S. W. Rep., 238; Burnett v. State, 51 Texas
Crim. Rep., 20; 100 S. W. Rep., 381; Puryear v. State, 50 Texas Crim.
Rep., 454; 98 S. W. Rep., 258; Hjeronymus v. State, 46 Texas Crim.
Rep., 157; Pollard v. State, 45 Texas Crim. Rep., 121. On question
of refusing defendant's charge on murder in the first and second de-
grees: Campbell v. State, 8 Texas Crim. App., 84; Campbell v. State,
10 Texas Crim. App., 560; Parker v. State, 22 Texas Crim. App.,
105; Carter v. State, 37 Texas Crim. Rep., 403; 40 S. W. Rep., 498;
Turner v. State, 41 Texas Crim. Rep., 329 and cases cited in the
opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in Fannin County, in
August, 1903, for the murder of one E. J. Johnson. At a former trial
he was convicted of manslaughter, which conviction was subsequently
set aside and in March of this year he was again put on trial in the
District Court of Fannin County, and was again convicted of man-
slaughter and his punishment fixed at confinement in the penitentiary
for a period of five years. Both of the parties were negroes. The
deceased was a very large man, some six feet, three or four inches tall,
and weighing more than two hundred pounds and was a man of great
physical strength. The appellant was a man weighing some one hun-
dred and thirty-five or one hundred and forty pounds and was at the
date of the killing 23 years of age. Much of the evidence strongly in-
dicates that the killing of Johnson by appellant was not only without
any possible justification, but that it was deliberate, and purposeful
and much of the evidence would sustain a conviction for murder in the
first degree. Indeed, the weight of the evidence strongly tends to con-
firm us in the conviction that he was guilty, if guilty at all, of murder
in the first or second degree, and if he had been convicted under an
appropriate instruction of either of these degrees of murder, we would
not have hesitated to have affirmed such verdict.

1. We cannot accede, however, to the suggestion and contention of
counsel for appellant that there was no evidence of raising the issue of
manslaughter. Their contention is that the testimony shows beyond
doubt or controversy that the killing was either murder in the first or
second degree, or that he was justifiable in having done the killing in
self-defense. The issue of self-defense was raiesd by the testimony and
was submitted by the court to the jury, but there were many circum-
stances which, not only made it proper but imperatively required the
court to submit the issue of manslaughter. The evidence shows that
on the day of the killing and some two or three hours before the kill-
ing, appellant approached deceased with the statement that he had
been telling on him that he had carried one Mary Eaton, a negro girl,
to a white man, presumably for improper purposes; that during this

interview they became engaged in a heated quarrel and that as a result thereof, appellant applied the most abusive and opprobrious epithets to the deceased; that both became very angry and deceased said he was going to get a gun and kill him. Appellant further states that he did notice and see that deceased went to the store of one Abernathy near by and tried to get a gun. It is shown also that between this time and the fatal meeting some two hours later, that appellant was advised by a friend of his that the deceased said he was going to kill him. It appears from the testimony of appellant, as well as others, that when he left town to go to the northern part of Bonham, to what the witnesses call Locksboro, he had in his delivery wagon some dishes but he states that he forgot to deliver the dishes; that he was not thinking about them but was all the time thinking about deceased. He states that when he met the deceased and before he drew his pistol and before deceased could have known he had a pistol, he saw in deceased's hands an open pocket-knife. It is shown that before deceased got out of the wagon, appellant threw a bottle at him; that deceased then got out of the vehicle he was in and started around towards the head of his horses. However, it appears from the testimony of appellant and practically all the witnesses that before the shot was fired deceased stopped and rather turned away and that at this particular juncture the fatal shot was fired. It is shown, too, by the testimony of several witnesses, notably appellant's wife, that he was at the time greatly excited. Only two hours had elapsed from the first quarrel to the time of the killing. In view of the great disparity of their strength, the facts of the threats of the deceased to kill appellant, the fact as stated by appellant that he knew that deceased was going to get a gun, the unjust accusation made, as claimed by appellant, the condition of his mind in that he was thinking, not of his work, but of deceased, taken in connection with the short time intervening between their former quarrel and the fatal difficulty, raise, we think, clearly the issue of manslaughter. It is true the same testimony raises the issue of self-defense, but there is testimony in the record from which the jury might have believed that appellant was not justified, either, under the doctrine of actual or apparent danger, in taking the life of deceased and yet would have been fully justified in holding that his mind was in such condition as to make the killing manslaughter. On the trial the court submitted to the jury the issue as to whether appellant was guilty of manslaughter, or whether he was entitled to be acquitted on the ground of self-defense. The charge of the court is an admirable, clear, and lucid exposition of the law of manslaughter and self-defense as applied to the facts of this case. In addition to the general charge, the court gave a number of special charges requested by counsel for appellant in which among other things, the court instructed them that appellant had a right to seek deceased for the purpose of getting him to stop telling untrue statements concerning him, or for the purpose of denying the truth of any such statements.

They were further instructed that the fact that defendant did seek and find deceased for such purpose, if he did do so, would neither cut off nor impair his right of self-defense. The court also gave a special charge elaborating the doctrine of self-defense in which the jury were instructed that if at the time appellant shot deceased, he was making preparation for an attack on him, or was about to attack or assault defendant, or if reasonably so appeared to appellant, viewed from his standpoint, and his alone, then his right of self-defense was complete and he could act upon such appearance of danger whether such danger really existed or not; that appellant was not bound to retreat in order to avoid the necessity of killing deceased, but would have the right to shoot deceased without waiting to see whether or not the danger in fact existed, nor was appellant bound to wait until an actual attack or assault was made by deceased. The jury in this special charge were further instructed that if it reasonably appeared to appellant from the attitude, words, conduct or acts of the deceased, or from all of these, or from any other fact or facts, or circumstances transpiring at the time of the shooting, together with what had transpired prior to that time between the parties, that deceased at the time of the meeting on the occasion of the killing was making preparation to assault or attack him for the purpose of killing him, or inflicting serious bodily injury upon him, viewed from the standpoint of appellant at the time and no other, that appellant had the right to act upon appearance of danger whether real or not, at the hands of deceased, and that in passing on the question of danger or apparent danger, the jury were authorized to take into consideration the difference in the sizes and strength of the deceased and appellant, together with all the other facts or circumstances in evidence before them. The court also gave a special charge to the effect that if deceased had threatened to get a gun and kill appellant and he knew of such threat, and believed or feared deceased would kill him, or inflict serious bodily injury upon him, that appellant would have the right to procure a pistol for his protection, and the fact that he did procure a pistol under such circumstances would not cut off or abridge his right of self-defense in this case. The court at the request of counsel further charged the jury that when a man's life had been threatened the law does not require him to report such threat to an officer of the law and have such person arrested; and the fact that appellant did not so report the alleged threat of deceased to the officers, instead of arming himself for his defense, would not abridge or impair his right of self-defense. The court further instructed the jury at the request of appellant's counsel, that appellant was not required by law to retreat or to secrete or to hide himself to avoid a difficulty with deceased, but would have the right to pursue his course of business without being deprived of his right of self-defense.

These charges taken in connection with the court's general charge, presented every issue which could be tried and passed upon by the jury in a manner most favorable to appellant, and so far as the charge of

the court is concerned, appellant is absolutely without any cause of complaint unless it be that the court erred in refusing to give appellant's 8th special charge. This special charge defined with great particularity and substantial accuracy, both murder in the first degree and murder in the second degree, and instructed the jury, with substantial accuracy, what facts would justify and warrant a verdict of murder in the first degree, and on what facts a conviction for murder in the second degree would be justified, applying the law of murder in the first degree and the law of murder in the second degree to the facts and the evidence, substantially conforming in every respect to the law of those degrees of homicide. Having done so, in the same charge, the following appears:

"The defendant in the case now on trial is not being tried for the offense of murder in the first degree or murder in the second degree, but is on trial for the offense of manslaughter, as that term is defined to you in the general charge.

"Now, bearing in mind the foregoing definitions of murder in the first degree and murder in the second degree, I therefore charge you that if the evidence before you establishes the defendant's guilt of either murder in the first degree or murder in the second degree, as those terms are above defined, and there is no evidence establishing the offense of manslaughter, as that term is defined in the main charge, you will find the defendant not guilty in this case, and so say by your verdict." Having found, as appears above, that the issue of manslaughter was raised by the evidence adduced on the trial, it becomes unnecessary for us to decide whether, if the evidence did not raise the issue of such grade of homicide, a conviction could be had for manslaughter, on proof that would only have justified a conviction of either murder in the first degree or murder in the second degree. There has been, on this question and kindred questions, a number of opinions rendered by this court, which, at least in their language, are not wholly consistent. We think the rule laid down in Pickett v. State, 43 Texas Crim. Rep., 1; 63 S. W. Rep., 325, is supported by the best considered decisions of this tribunal and is so intrinsically sound and just as to be a sufficient support for our decisions in this case. The rule as there stated by Judge Davidson, is: "Where defendant was acquitted of murder, and convicted of manslaughter, and on appeal the judgment was reversed, he was not entitled in the succeeding trial to an instruction to acquit him of the charge of manslaughter, if the evidence showed him to be guilty of murder." It appeared in that case as it appears in this, that there was evidence which would have authorized a conviction of either murder or manslaughter and the appellant requested the court to instruct the jury that if they believed from the evidence that Pickett was guilty of murder in the second degree they should acquit of manslaughter. The effect, as stated, of that instruction and the contention there made was that an acquittal of murder would operate as a bar to the conviction of manslaughter under the same indictment, although

there was evidence supporting the latter offense. It was there stated, which is undeniably true, that it has been uniformly held that where a party has been acquitted of the higher degree, or grade of offense that he cannot again be convicted of that grade or degree, but that such acquittal does not operate as a bar in the prosecution of the inferior degree of such offense. On that very issue Judge Davidson says:

"Appellant's contention is that the jury should offset manslaughter with the acquittal of murder, and therefore acquit if they find from the evidence that defendant is guilty of the higher offense; both of which are but grades of the same offense, and triable under the allegations of the indictment. We cannot assent to this proposition. In Parker's case, 22 Texas Crim. App., 105; 3 S. W. Rep., 100, the trial court instructed the jury that they could use the testimony showing murder as a predicate for the conviction of manslaughter, although the party had been previously acquitted of murder. That is, appellant could not be again tried for murder when he had been once acquitted of that offense. That case rests upon that proposition. Other cases are numerous to the effect that, where there is evidence of a higher grade of offense, a conviction will not be disturbed for the inferior degree, though there was no testimony showing the inferior degree. These are expressly recognized and sanctioned in Parker's case. Fuller's case, 30 Texas Crim. App., 559; 17 S. W. Rep., 1108, is authority for holding that a conviction for murder in the second degree can be had where the evidence shows murder in the first degree. This seems to be predicated upon the idea that malice is a constituent element of both degrees of murder. The Fuller case was reaffirmed in Condo's case, 35 Texas Crim. Rep., 98; 34 S. W. Rep., 286." Our lawmakers seem early to have recognized that just such contentions as that which confronts us now would often occur. In our Code of Criminal Procedure, paragraph 9, article 817, we find the following provision: "Where the verdict is contrary to law and evidence. A verdict is not contrary to the law and evidence, within the meaning of this provision, where the defendant is found guilty of an offense of inferior grade to, but of the same nature as the offense proved." In Campbell v. State, 10 Texas Crim. App., 560, Judge Winkler, in passing on a somewhat similar question, said: "If there is any variance between the proof and the finding of the jury, it will be found on a careful examination that the evidence tends rather to establish a higher grade of offense than manslaughter, rather than a lower grade. If this be true, and if by the administration of the law one accused of crime should be convicted of a lower grade of the crime included within the offense charged in the indictment than the proof warrants, certainly the defendant has no just ground to complain that he has been convicted of a grade of offense lower than the testimony warranted, and one for which a milder punishment is prescribed by law. In this case, however, on account of the fact that on a former trial the defendant had been virtually acquitted of murder, he could not be put on trial for that grade of

offense a second time, but this did not prohibit the State from calling upon him to answer for a lower grade of the offense, included within the crime charged in the indictment, and for which he had not been previously tried; and to hold that a conviction for the lower grade of offense could not be sustained on the ground that the proof did not reduce the offense to the lower grade would be to say that the State could not inflict any punishment for the offense whatever, no matter how plain the evidence of his guilt. Such an application of the law would be a monstrous mockery, not to be tolerated." Murder in the first degree, murder in the second degree and manslaughter, are not, in the strictly legal sense, different offenses, but merely different grades of the same offense. They are all species of unlawful homicide. The provision of our statute, by which in terms, it is said that the mere fact that one is convicted of a lesser grade of offense, than that which the evidence shows, should be no ground for a new trial, was but a legislative declaration that because in any case, the wrongdoer had not received the punishment to which he was entitled, should be no ground or cause why he should go unwhipped of punishment at all. At best the grades and degrees of an unlawful killing are more or less arbitrary and the line between them sometimes difficult to be drawn. It was intended, as it should have been intended, to punish every man when he had unlawfully and intentionally taken the life of his fellow man, and to hold that because a former jury had acquitted the appellant in this case, of murder in the first or murder in the second degree, that he is of right entitled on a second trial to go free because another jury might conclude under a charge giving these necessarily technical definitions that the offense was murder in the second degree, is to absolutely nullify the substantial provision of our Code of Criminal Procedure above quoted. In this case the court defined manslaughter in terms that are substantially beyond criticism and submitted to the jury the issue, or fact as to whether in the light of the evidence, and the instruction so given, the appellant was guilty of this offense. Having been acquitted of murder in the first and murder in the second degree, it was not the right of appellant to have these degrees of murder defined or submitted, or one offset by the other. This we understand to be clearly the rule and is so in accordance with justice and so supported by the provisions of our code above quoted, as to require us to follow it. For these reasons we believe that the court did not err in refusing to give the special charge above referred to.

2. Another matter complained of was that on the trial of the case, after the conclusion of the evidence, the district attorney, in the presence of the jury, stated to the court, and while in the act of addressing the court, that he was going to read the Pickett case, 43 Texas Crim. Rep., 1; 63 S. W. Rep., a case in which, like the one before the court, the defendant had been tried and acquitted of murder in the first and second degrees and convicted of manslaughter and the case reversed. That in this case on trial, the defendant has been acquitted

of murder in the first and second degrees and is now on trial for man-slaughter. In approving this bill the court states that the district attorney "Never did say that the defendant in this case was convicted of manslaughter." The statement in question was addressed to the court, was not in any sense addressed to the jury, though, it was made, it appears, in their presence. It was only by inference that the jury could have understood, if at all, that appellant had theretofore been convicted of the offense of manslaughter. There was no statement to that effect, nor could they, from the statement of the district attorney, have so understood, unless they might have made this inference from the fact of his statement of a former acquittal of murder in the first degree and murder in the second degree. That this would, to the legal mind, have been a fair deduction would be confessed, but we do not believe it would have of necessity been so understood by the jury, nor is there such an allusion to his former conviction as to justify a reversal of the case.

3. There is another question arising upon the trial which we deem it necessary to discuss and that is, that portion of the court's charge which instructs the jury that in determining whether or not there was adequate cause, the jury have the right to consider any former provoca-tion, if any, and all other facts and circumstances in evidence before, after, or at the time of the homicide. We think that not only is this charge not erroneous but that a failure to so charge would have been error. It must be remembered that the only other former provocation occurred and was the subject-matter of discussion between the parties, only about two hours before the killing and was so intimately con-nected with it, and the state of rage, resentment and passion of the appellant was so continuous and unbroken as to make a consideration of the first quarrel and controversy essential and proper to determine the state of mind of the appellant at the very time of the shooting. The entire charge of the court on this subjct was as follows: "By the expression, 'Under the immediate influence of sudden passion,' is meant:

"That the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provoca-tion. The act must be directly caused by the passion arising out of the provocation. It is not enough that the mind is merely agitated by the passion arising from some other provocation, or a provocation given by some other person than the party killed." And then follows the charge complained of: "And in determining whether or not there was adequate cause, the jury have the right to consider any former provoca-tion, if any, and all other facts and circumstances in evidence before, after or at the time of the homicide."

4. There was no error in overruling the application for a continu-ance. As stated, appellant was indicted on the 14th day of August, 1903. The case was called for trial on March 3, 1908. The witness for whom the continuance was sought was attached on the 4th day of September, 1907. The facts expected to be proved by her were, as

stated, that she was thirty or forty feet from the parties at the time of the killing; that she saw deceased get off of his wagon and walk around north of the head of his team and their heads met defendant; that the shooting occurred in front of the door and that just prior thereto appellant was east of said team and deceased west of the seat of the wagon on which he was riding. This testimony was claimed to be material in view of the fact that the witnesses for the State would swear that the shooting did not occur in front of the team but that appellant shot deceased while he was either on the wagon seat or just after he was leaving it. There were, as the record shows, some eight or ten witnesses to the homicide. There is some slight difference as would naturally occur, in the testimony of the witnesses as to the precise conduct of the parties. The testimony of some of the witnesses correspond very closely with that which it was desired to obtain from the missing witness. Her testimony, if produced, would have been only cumulative and is not believed to be of such a substantial character as, in view of the lapse of all these years, would have justified a further continuance of the case.

5. Again, error is assigned to the action of the court in refusing to permit the witnesses Wise and McKee to testify that the State's witnesses were prejudiced and hostile to appellant on account of his having aided the officers in running down criminals among the negroes in that section of the city. It appears from the record that this matter arose in this manner: While the witnesses, Wise and McKee, were on the stand, they were asked the following question: "Do you know whether or not there was any animosity and ill-feeling existing among these negro witnesses out there at Locksboro against the defendant, and if so, what it was for?" It was stated that appellant expected the answer of the witnesses to be that as an officer of the law, that he knows all about it and that these negroes out there, particularly the witnesses, had at the time of the homicide and now have an enmity and animosity against the appellant and that he expected further to show by said witnesses that the reason for such enmity and animosity was on account of appellant being an assistant of the officers and that he had incurred the enmity of these witnesses; that this testimony was offered for the purpose of impeaching these witnesses. On the trial there was no question asked of any witness as to his state of feeling towards appellant, nor was there any effort made to show any unkindness, animosity, or ill-will; it is not shown that the witness named had personal knowledge of the feelings, or attitude of any particular witness towards appellant, nor was he interrogated with reference to the feelings, attitude, or disposition of any particular witness towards appellant; nor is it shown that he had personal knowledge, or are the means of such knowledge, in respect to the attitude of any particular witness, shown. It is rather, we think, an effort upon the part of counsel for appellant to show the conclusion or belief of the witness in respect to this matter as deduced from the activity of appellant in aiding them

in ferreting out crimes in that neighborhood. There can be, we think, no doubt that it is always permissible in every case where it can be shown by competent evidence, to make proof of the hostile attitude of any witness in respect to any party or any cause before the court, such evidence is clearly admissible for the purpose of affecting the credibility of witnesses and the weight of their testimony. 2 Enc. of Ev., p. 406; Surrill v. State, 29 Texas Crim. App., 321 and Watts v. State, 18 Texas Crim. App., 381. But before in any case such testimony will be permitted it ought to be shown that the witness in fact knew the feelings, attitude and disposition of the witness about whom he is testifying, and in no case, under the guise of stating such attitude, should a witness be permitted to testify to other transactions from which he might or would deduce a conclusion of such hostile attitude or feeling. We do not think as here presented that the testimony is permissible and hold that the action of the court complained of, as presented by this record, was not erroneous.

6. We believe in the light of the entire record that there was no error of which appellant can complain, and so believing, it is ordered that the judgment of the court below, be and the same is hereby in all things affirmed.

*Affirmed.*

[Motion for rehearing overruled without written opinion.—Reporter.]