Appellant moves for rehearing, again urging the same points presented and considered on original submission.
The only matter regarding which this court has been disturbed, or which has given rise to different views among the members of the court is the question presented in bills of exceptions Numbers 2-A and 3, and there is no difference as to the legal principle involved, but only as to its application. Said bills disclose that appellant offered to prove by appellant and one White that appellant and other officers arrested the father and a brother of State's witnesses Mateo and Ignacio Rodriguez upon a charge of theft of cattle from White; that the father and brother were taken to Juarez and upon a trial the father was discharged and the brother upon his plea of guilty was sent to jail for six or eight months. Upon the State's objection the evidence was excluded. The bills themselves do not show upon what ground the evidence was offered, nor the ground of objection urged by the State. The qualification to each of the *Page 355 
bills shows that when Mateo and Ignacio Rodriguez were being cross-examined by appellant's counsel they each testified that they had no knowledge of the matters inquired about. The court states in his qualification that the objection urged by the State was that it had not been shown that either of said witnesses had any knowledge of the transaction sought to be proved. The court further states that "the matters of fact stated in the objection" were true, and that when the objection was sustained he advised counsel for appellant that if any testimony was offered tending to show that the witnesses Mateo and Ignacio Rodriguez had knowledge or information as to the matters about which appellant and White offered to testify he would admit the offered testimony. The killing for which appellant was on trial occurred in July, 1929. The transaction regarding the arrest of the witnesses' father and brother occurred in February, 1932. The indictment against appellant was returned in March, 1934, and the trial had in May, 1934. The two Rodriguez witnesses lived in El Paso at the time of the killing and were visiting their father and other relatives in San Ysidro. After the killing, and the same day, they returned to El Paso, and it may be inferred from the record that they continued to live in El Paso up to the time of the trial. They never voluntarily reported to any officer what they knew about the killing in 1929. It appears from their own evidence — and there is no other on the point — that a Mr. Griffin, a United States officer, was the first officer to interrogate them about the matter, and they then for the first time — which was sometime in 1933 — disclosed to officers what they knew of the killing of Scotten. This record contains no testimony showing any act or word of either of the Rodriguez witnesses which would indicate ill-will, animus or malice towards appellant. Appellant's contention seems to be that if he had been permitted to prove that the father and brother of the two Rodriguez witnesses had been tried in Juarez for theft of cattle from White then it might be inferred under all the facts in evidence — although against their own positive testimony — that the two witnesses knew of such trial, and then upon the knowledge thus inferred, base a further inference that they also knew of appellant's connection with such arrest, and then a further inference that such arrest caused the two witnesses in question to entertain ill-will, animus and malice towards one of the officers engaged in making it; notwithstanding the testimony of the two witnesses is in harmony with the evidence of other witnesses whose attitude towards appellant is not questioned. *Page 356 
The animus of a witness is never immaterial, and while the courts have been liberal in permitting inquiry regarding it, we are of opinion the matter here comes in such a way as to be too speculative and with no probative force. We refer to Burnett v. State, 53 Tex.Crim. Rep., 112 S.W. 74, and quote therefrom the language of Judge Ramsey as follows: "Again, error is assigned to the action of the court in refusing to permit the witnesses Wise and McKee to testify that the State's witnesses were prejudiced and hostile to appellant on account of his having aided the officers in running down criminals among the negroes in that section of the city. It appears from the record that this matter arose in this manner: While the witnesses, Wise and McKee, were on the stand, they were asked the following question: 'Do you know whether or not there was any animosity and ill-feeling existing among these negro witnesses out there at Locksboro against the defendant, and if so, what it was for?' It was stated that appellant expected the answer of the witnesses to be that as an officer of the law, that he knows all about it and that these negroes out there, particularly the witnesses, had at the time of the homicide and now have an enmity and animosity against the appellant, and that he expected further to show by said witnesses that the reason for such enmity and animosity was on account of appellant being an assistant of the officers and that he had incurred the enmity of these witnesses; that this testimony was offered for the purpose of impeaching these witnesses. On the trial there was no question asked of any witness as to his state of feeling towards appellant, nor was there any effort made to show any unkindness, animosity, or ill-will; it is not shown that the witness named had personal knowledge of the feelings, or attitude of any particular witness towards appellant, nor was he interrogated with reference to the feelings, attitude or disposition of any particular witness towards appellant; nor is it shown that he had personal knowledge, or are the means of such knowledge, in respect to the attitude of any particular witness, shown. It is rather, we think, an effort upon the part of counsel for appellant to show the conclusion or belief of the witness in respect to this matter as deduced from the activity of appellant in aiding them in ferreting out crimes in that neighborhood. There can be, we think, no doubt that it is always permissible in every case where it can be shown by competent evidence, to make proof of the hostile attitude of any witness in respect to any party or any cause before the court, such evidence is clearly admissible for the purpose of affecting *Page 357 
the credibility of witnesses and the weight of their testimony. 2 Enc. of Ev., p. 406, Surrill v. State, 29 Texas App., 321, and Watts v. State, 18 Texas App., 381. But before in any case such testimony will be permitted it ought to be shown that the witness in fact knew the feelings, attitude and disposition of the witnesses about whom he is testifying, and in no case, under the guise of stating such attitude, should a witness be permitted to testify to other transactions from which he might or would deduce a conclusion of such hostile attitude or feeling. * * *"
Believing proper disposition was made of the case in our original opinion, the motion for rehearing will be overruled.
Overruled.