**Henry COLEMAN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 52225.

Court of Criminal Appeals of Texas.

Jan. 26, 1977.

**832**

Terry L. Belt, Austin, for appellant.

Joe Carroll, Dist. Atty., Troy C. Hurley, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for possession of cocaine. The jury assessed punishment at two years' confinement in the Texas Department of Corrections.

Appellant was alleged to have intentionally possessed an unweighable quantity of cocaine: a trace amount. The record reveals that 1/280,000 of an ounce is weighable.

Other than the chemist's testimony, and that of the witness from the Automobile Records Department of Bell County who identified appellant as being the record owner of the vehicle in which he was stopped while driving, the only evidence presented by the State was the testimony of the arresting officer. The officer testified that he stopped appellant at 12:05 a.m. to serve a misdemeanor arrest warrant for gambling. The record reveals that the gambling charge was subsequently dismissed. The officer testified that immediately upon shining the flashlight into the window of appellant's car, a small vial on the floor popped into "plain view." The vial was admitted under this doctrine. The unweighable trace amount of cocaine was not introduced into evidence.

Although no other contraband or weapons were found on appellant, and he was voluntarily complying with all of the arresting officer's orders, the officer testified that he contacted several other units of the Killeen Police Department to "[back] me up." He further testified that he and others examined the small vial and the unweighable trace amount of substance therein had a "brilliant sparkle to it." This led him to believe that the substance was cocaine.

The appellant claimed the unweighable trace amount of cocaine was planted on him by the arresting officer. The appellant attempted to support this defense by the testimony of himself and two other defense witnesses to the effect that members of the Killeen Police Department severely disliked him and that this dislike began before the time of his arrest and continued until the day of his trial. In depriving him of the right to show the relationship and the attitude of the Killeen Police Department toward him, the trial court fell into error for two reasons: (1) The appellant had the right to impeach the arresting officer's credibility by showing him to be a past member of a class who has been and will continue to be severely prejudiced against appellant. (2) The appellant had the right to support his defensive theory.

The issue at trial was simply who the jury was going to believe, the appellant or the arresting officer. In excluding the defense's proffered testimony, the trial court not only denied appellant a defensive theory, it denied him the only defense he had.

Appellant's bill of exception on the excluded testimony shows that he would have

testified that prior to his trial a Killeen police officer threw a snake in the car he was driving, and such officer later admitted doing this; that he had been charged with carrying firearms, and such charges were dropped; that he had been charged with robbery, and such charges were dropped after he was held for 18 hours; that Killeen police officers had thrown a bomb under his car at one time, which blew up with force sufficient to knock the hubcaps off the car parked next to his at that time; that by virtue of all of these facts and circumstances he was of the opinion that the Killeen Police Department did not like him, and that any member thereof, either past or present, when called to testify against him, would lie because of such bias and prejudice.

Jim Hogan would have testified that he was a friend of the appellant and that the Killeen Police Department had abused appellant's rights previously. Specifically, he would have testified that on one occasion a detective of the Killeen Police Department threw an army simulator bomb under appellant's car, and it exploded with such force that it blew the hubcaps off the car sitting adjacent to appellant's; that the Killeen Police Department in general were antagonistic toward the appellant and that this antagonism would be extended to any witness from the Killeen Police Department testifying against Mr. Coleman.

Had his testimony not been excluded, Bill Williams would have testified for the appellant as follows: He would have stated that he became familiar with the Killeen Police Department when three of its officers framed him by planting "dope" in his car; that subsequent to that incident the three officers admitted that they had planted the "dope"; that charges against him resulting from this incident had been dropped; that members of the Killeen Police Department had "an" antagonistic attitude toward the appellant and that this antagonism would be reflected by biased testimony if they were called to testify against the appellant; that four or five months before the trial the members of the Killeen Police Department

threw a bomb under appellant's car; that previously, when appellant first returned to town, three members of the Police Department picked him up on a parking lot and carried him out in the country and pointed a shotgun at his head in an attempt to make him admit things of which he had no knowledge; that at some previous time they arrested appellant for gambling and the charges were subsequently dropped; that they had thrown a snake in appellant's car; that upon arrest for the instant offense members of the Killeen Police Department came into appellant's house, threw him down on the floor, "kneed" him in the back and stated that they had hoped they would have found him there by himself; that by virtue of all these facts, he was of the opinion that anyone from the Killeen Police Department would be biased in his testimony against the appellant.

■■■ The animus, motive, or ill-will of a prosecuting witness who testifies against the defendant is never a collateral or irrelevant inquiry, and the defendant may show by himself, or by others if necessary, why the witness is unfriendly toward him. *Kissinger v. State*, 126 Tex.Cr.R. 182, 70 S.W.2d 740, 742 (1934). It is not necessary that a predicate be laid that the witness himself is biased toward the defendant before evidence which would create this bias is introduced. *Smith v. State*, 106 Tex. Cr.R. 202, 291 S.W. 544, 545 (1927). The reasoning behind this rule is simply that great latitude should be allowed the accused in showing any fact which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him. The jury should be given the opportunity to judge for themselves the witness's credibility in light of his feelings toward the defendant. *Wood v. State*, 486 S.W.2d 359, 362 (Tex.Cr.App.1972); *Minor v. State*, 476 S.W.2d 694, 695 (Tex.Cr. App.1972).

This Court allows ". . . legitimate exploration of those matters indicating the friendship or leaning of witnesses, *and those associated with them*, toward any party or issue involved." (Emphasis added)

*Gunn v. State*, 95 Tex.Cr.R. 276, 252 S.W. 172, 178 (1922). ". . . *[A]ny fact and every fact* going or tending to show mental bias, interests, prejudice, or any other motive, or mental state, or status [of the witness], which, fairly considered and construed, might even *remotely tend* to affect his credibility, should [be] admitted." (Emphasis added) *Green v. State*, 54 Tex.Cr.R. 3, 111 S.W. 933, 935 (1908). "There can be, we think, no doubt that *it is always permissible*, in every case where it can be shown by competent evidence, to make proof of the hostile attitude of any witness in respect *to any party or any cause* before the court. Such evidence is clearly admissible for the purpose of affecting the credibility of witnesses and the weight of their testimony." (Emphasis added) *Burnett v. State*, 53 Tex.Cr.R. 515, 112 S.W. 74, 79 (1908).

It has been held that inquiry is proper as to whether a relative of a witness is an enemy of the accused. *Wade v. State*, 75 Tex.Cr.R. 531, 171 S.W. 713 (1914). Therefore, it should be proper to show that former fellow employees of the witness are enemies of the accused.

In civil cases, the rule is well established that "the jury is entitled to know *any fact which would tend to influence* the testimony given by a witness . . . . The rule is based upon the theory that the jury should know such facts, the better to enable them to weigh the words of the witness." *Hyde v. Marks*, 138 S.W.2d 619, 623 (Tex. Civ.App.—Fort Worth, 1940, writ dism'd, judgmt. correct). This is the rule where money and property are involved. It should not differ where liberty is the concern.

■ The motives which operate on the mind of the witness while he testifies should never be regarded as immaterial, because they tend to affect his credibility. *McDonald v. State*, 77 Tex.Cr.R. 612, 179 S.W. 880, 882 (1915).

Turning to the specifics of this case, the offered but excluded testimony alleged, among other things, that numerous prior complaints had been filed against the appellant and subsequently dismissed, that prior to the instant arrest three members of the Police Department had picked appellant up on a parking lot and carried him out in the country and pointed a shotgun to his head in an attempt to make him confess to some other offense, and that there was a general conspiracy among members of the Killeen Police Department which had as its purpose getting appellant out of town. In *Durfee v. State*, 73 Tex.Cr.R. 165, 165 S.W. 180 (1914), this Court held that the exclusion of testimony to facts tending to show the interest and prejudice of the State's witnesses from the fact that they had taken him out of town and sought to extort a confession from him was error. In *Baughman v. State*, 49 Tex.Cr.R. 33, 90 S.W. 166 (1905), this Court held that evidence of a conspiracy between the prosecuting witnesses *and others* to carry on a systematic prosecution of defendant and some of his friends, growing out of extraneous troubles, and that the prosecution in question was part and parcel of the conspiracy, is admissible to show, or tend to show, the animus, motive, and reasons of the prosecution. In *Jones v. State*, 81 Tex.Cr.R. 230, 194 S.W. 1109 (1917), this Court held that an accused should be permitted to prove a conspiracy among the prosecuting witnesses to fabricate testimony against the accused.

■ Where the State's evidence conflicts with that of the defendant's, evidence that State's witnesses had made other charges against the defendant which had been dismissed was admissible for the purpose of showing the animus of the witnesses. *Sackheim v. State*, 94 Tex.Cr.R. 43, 249 S.W. 867, 868 (1923).

Our more recent decisions have reiterated the rule that a defendant should be accorded great latitude in showing any fact which would tend to establish ill feeling, bias, motive, and animus upon the part of any witness testifying against him and that he is not restricted to any one method of so showing. *Fletcher v. State*, 437 S.W.2d 849, 851–852 (Tex.Cr.App.1969).

The case at bar is similar to that of *Hooper v. State*, 494 S.W.2d 846 (Tex.Cr. App.1973), where evidence of police miscon-

duct was erroneously excluded. In that case the defendant Hooper denied ever carrying a paper sack containing heroin, as the State alleged. In the instant case, the appellant denied ever possessing the unweighable trace amount of cocaine, as the State alleged. In *Hooper,* the defense counsel summed up the critical issue when he argued to the judge, "Who is the jury going to believe." In the case at bar, the issue is identical. In *Hooper,* we held that the offered evidence was erroneously excluded because "the police officer's credibility was all important; any possible malice, bias or prejudice toward appellant would be admissible to attack their credibility, and to lay the groundwork for possible impeachment of the officers." In *Hooper,* we followed the general rule that "great latitude should be allowed the accused in showing *any fact* which would tend to establish ill feeling, bias, motive and animus upon the part of any witness testifying against him." (Emphasis included) *Id.,* at 848. *Accord, Seal v. State,* 496 S.W.2d 621, 623 (Tex.Cr. App.1973).

In *Blair v. State,* 511 S.W.2d 277 (Tex.Cr. App.1974), we held that similar evidence was improperly excluded. We stated that the jury's duty in that case came down to the issue of whom they chose to believe, the appellants or the police officer. The police officer's credibility was all important; any possible malice, bias or prejudice toward the defendant would be admissible to attack his credibility and to lay the groundwork for possible impeachment of the officer.

We note that in *Fentis v. State,* 528 S.W.2d 590 (Tex.Cr.App.1975), the dissent reasons that evidence of an extraneous offense committed by the accused should have been admitted into evidence as tending to show bias and hatred toward a class: police officers. Assuming arguendo that this reasoning is sound, it would follow that evidence of extraneous occurrences are admissible to show bias and hatred by a class: police officers, against a particular defendant. It has been said that, "A good rule of evidence works both ways." *Montemayor v. State,* 543 S.W.2d 93 (Tex.Cr.App.1976;

dissenting opinion on State's Motion for Rehearing).

For all of the above reasons, the proffered testimony by the appellant, and his two witnesses, was competent, relevant, material, and erroneously excluded.

 The judgment should be reversed for yet another reason. The chemist testified that it is possible to weigh 1/280,000 of an ounce of cocaine. The trace amount that he recovered from the small vial was unweighable because of difficulty in removing it from the vial. However, he felt that the actual amount in the vial was no more than 5/28,000 of an ounce and maybe as little as 1/28,000 of an ounce. "It would be a harsh rule, indeed, that would charge appellant with knowingly possessing that which it required a microscope to identify." *Pelham v. State,* 164 Tex.Cr.R. 226, 298 S.W.2d 171, 173 (1957).

We decline to now adopt such a rule.

The judgment of the trial court is reversed and the cause remanded.

DOUGLAS, J., concurs in the results.