IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-316-CR





ROBERT E. DRAPER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 39,301, HONORABLE RICK MORRIS, JUDGE



 





PER CURIAM

 Over his plea of not guilty, appellant was convicted by the trial court of possession
of less than twenty-eight grams of cocaine. Tex. Health & Safety Code Ann. § 481.115 (a), (b)
(Pamph. 1992). The trial court assessed punishment at ten years' imprisonment. We will affirm
the judment of conviction.


I. CHAIN OF CUSTODY



 In his first point of error, appellant asserts the trial court erred in overruling his
objection to the introduction of the State's Exhibit 10 and the three razor blades it contained. 
Appellant argues that the State failed in its burden to show the beginning of the chain of custody
of the exhibit and blades.


A. Authorities


 Questions concerning the admission of evidence lie within the sound discretion of
the trial court. Jackson v. State, 575 S.W.2d 567, 570 (Tex. Crim. App. 1979). The trial court's
determination on admissibility will not be reversed on appeal unless a clear abuse of discretion
is shown. Werner v. State, 711 S.W.2d 639, 643 (Tex. Crim. App. 1986). Tagging an item of
physical evidence at the time of its seizure and then identifying it at trial based upon the tag is
sufficient for admission barring any showing by the defendant of tampering or alteration. Stoker
v. State, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), cert. denied, 111 S.Ct. 371 (1990). The
chain of custody is conclusively proven if an officer is able to identify that he or she seized the
item of physical evidence, put an identification mark on it, placed it in the property room, and
then retrieved the proffered item on the day of trial. Id. 

B. Facts


 The State has shown the chain of custody from the time the matchbox containing
the blades were seized until their delivery to the court. Killeen police officer John Moseley
testified that when he searched appellant, he found two Blue Diamond-brand matchboxes in
appellant's shirt pocket. One matchbox, containing three single-edged razor blades was marked
as State's exhibit 10. (1) Moseley did not personally mark the matchbox or blades. Moseley
testified that he kept custody of the matchbox containing the blades until he turned it over to the
evidence-marking officer present at the scene. 

 Killeen police officer Jackie Cox testified that he was the evidence officer at the
scene of appellant's arrest and that Moseley gave him the items removed from appellant, including
Exhibit 10. Cox testified that he personally marked Exhibit 10 with the case number and his
initials on June 21, 1990. Cox personally inventoried the contents of the matchbox and found it
contained three single-edged razor blades. Cox did not individually mark the razor blades. Cox
also testified that the razor blades were kept in the matchbox the entire time they were in his
custody. Cox placed Exhibit 10 into an individual bag and marked this bag as "item number 2." 
Cox subsequently placed the bag containing the matchbox and blades in the Killeen Police-Department-evidence depository. Cox testified that the evidence depository is a secured area
containing individual lockers with locks. The only person with access to the lockers is the
evidence custodian.

 Officer George Lane is the Killeen Police-Department-evidence custodian. He
testified that he counter-initialed Exhibit 10 and the individual razor blades when they came into
his custody. Lane testified that the blades were initialed when he received them. He maintained
the matchbox with the blades in a secured area until he personally carried it to the United States
post office, sealed it in an envelope, and sent it registered mail, return receipt requested, to the
Department of Public Safety (DPS) laboratory. 

 Joel Budge, a DPS chemist, testified that he received Exhibit 10 from George Lane
via registered mail, return receipt requested, on October 12, 1990. Budge initialed the exhibit and
razor blades, and put a DPS case number on them. He testified the matchbox and blades were
maintained in the laboratory pending analysis. Budge analyzed them and personally brought them
to the courtroom.

 At trial, Cox, Lane, and Budge each positively identified Exhibit 10 and their
respective markings made on the exhibit when they took custody of it. Lane and Budge also
identified their markings on the razor blades.

C. Discussion and Holdings


 Appellant complains about: (1) Moseley and Cox's failure to mark the individual
razor blades; (2) inconsistencies in testimony concerning when and by whom the razor blades
were marked; and (3) inconsistencies in the testimony regarding whether the blades were new or
in wrappers. 

 Cox's marking of Exhibit 10 and subsequent positive identification of the exhibit
at trial are sufficient to establish the beginning of the chain of custody of the exhibit. See
Hallmark v. State, 789 S.W.2d 647, 650 (Tex. App. 1990, pet. ref'd); King v. State, 710 S.W.2d
110, 113 (Tex. App. 1986), cert. denied, 484 U.S. 829 (1987). 

 Moseley's and Cox's failure to mark the individual blades and the conflicting
testimony about when and by whom the blades were eventually marked do not amount to a break
in the chain of custody. To hold that the contents of an exhibit must be marked would require that
the cocaine inside a matchbox found on the loading dock also be marked. The law does not
require this. See Stoker, 788 S.W.2d at 10; Garza v. State, 573 S.W.2d 536, 538 (Tex. Crim.
App. 1978); Mendoza v. State, 552 S.W.2d 444, 448 (Tex. Crim. App. 1977). Cox, who was
at the scene of the arrest, testified that Moseley gave him the items taken from appellant, including
the matchbox containing the blades. Cox testified that while the matchbox and blades were in his
custody, the blades were kept inside the matchbox. Thereafter, the record shows that the chain
from Cox to Lane was established, with Lane marking both the matchbox and the blades. The
chain from Lane to Budge was likewise established. Budge also marked the blades well as the
matchbox. Appellant has not shown a break in the chain of custody. Consequently, conflicting
testimony regarding the condition of the blades, when and by whom they were marked, or whether
they were in wrappers, goes to the weight to be given the evidence, not its admissibility. Stoker,
788 S.W.2d at 10; Mendoza, 552 S.W.2d at 448. Appellant's first point of error is overruled.


II. SUFFICIENCY OF THE EVIDENCE



A. Standard of Review



 In his second point of error appellant challenges the sufficiency of the evidence to
prove that he intentionally and knowingly possessed cocaine. In reviewing the sufficiency of the
evidence to sustain the conviction, the standard of review on appeal is the same for both direct
and circumstantial-evidence cases. The critical inquiry is whether, after reviewing the evidence
in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); McGoldrick v. State,, 682 S.W.2d 573, 577 (Tex. Crim. App. 1985). In
circumstantial-evidence cases we must also determine whether the evidence viewed in the light
most favorable to the verdict excludes every reasonable hypothesis except the defendant's guilt. 
Carlsen v. State, 654 S.W.2d 444, 447 (Tex. Crim. App. 1983). (2) The appellate court must
consider all of the evidence presented whether properly or improperly admitted. Nickerson v.
State, 810 S.W.2d 398, 400 (Tex. Crim. App. 1991). 

B. Facts


 The indictment alleges that appellant, on June 21, 1990, "did then and there
intentionally and knowingly possess a controlled substance, to-wit: Cocaine in the amount of less
than 28 grams by aggregate weight including any adulterants and dilutants." Officer Moseley is
assigned to the narcotics section of the Killeen Police Department's Organized Crime Division. 
He testified that on June 21, 1990, he was in plain clothes patrolling in an unmarked police
vehicle with officer Jack Abbot of the Killeen Independent School District Police. At 8:10 p.m.,
Moseley received a call from a confidential informant (3) who reported that one Robert Draper was
in possession of a quantity of crack cocaine. The informant told Moseley that Draper had the
cocaine in two matchboxes. The informant provided a description of Draper as a black male, five-feet-eleven-inches to six-feet tall, medium build wearing a striped shirt, black shorts, and high-topped-tennis shoes with no socks.

 The initial tip indicated that Draper was alone. However, while en route to the
location where the informant had indicated Draper could be found, Moseley received further
information from Killeen Police Officer Jackie Cox, who had subsequently spoken to the same
confidential informant. Cox told Moseley that Draper was now in the company of a black female
known as "Little Bit." Moseley testified that he did not know Draper, but did know Little Bit and
would recognize her on sight.

 Within twenty minutes of the initial informant's tip, Moseley located the suspect
and Little Bit two blocks from the indicated location. Appellant was sitting on a loading dock and
Little Bit was standing in front of him. Appellant and Little Bit were the only individuals the
officers observed in the area. Appellant fit the description given by the informant. As Moseley
and Abbot approached in their unmarked car, appellant stood up and began to walk toward them. 
He stopped approximately fifteen feet from the car. Moseley got out of the car, identified himself
and asked appellant to place his hands on the hood of the car. Appellant was carrying a white
plastic bag, which Moseley instructed him to put down.

 Moseley searched appellant and the plastic bag. He found two Blue Diamond-brand
matchboxes in appellant's shirt pocket; one contained matches, the other contained three single-edged razor blades. In the white plastic bag, Moseley found numerous boxes of Blue Diamond
matches, loose wooden stick matches, and the paper packaging matchboxes are wrapped in when
bought in a group.

 Moseley testified that officer Abbot participated in the stop and search. Within two
minutes of stopping appellant, Abbott found another matchbox on a trailer located on the loading
dock, approximately ten feet from where appellant had been sitting. Moseley testified that Abbott
searched the loading dock because it is common in narcotics cases for suspects to throw or discard
items of contraband when approached, and maybe "something would be around." Officer Abbott
testified that inside the matchbox he found "faded whitish colored rocks"; some were loose and
some were inside a plastic baggie. DPS chemist Joel Budge testifed that he analyzed the eleven
rocks inside the matchbox and they were cocaine.

D. Discussion and Holdings


 Appellant argues that the State failed affirmatively to link appellant to the crack
cocaine found on the loading dock and, therefore, failed to exclude every reasonable hypothesis
except the appellant's guilt. 

 1. Cocaine on Appellant's Person


 Before addressing appellant's contentions regarding the cocaine found on the
loading dock, we note that cocaine was found on appellant's person. DPS chemist Budge testified
that he found traces of cocaine on the razor blades found inside the matchbox that was seized from
appellant's shirt pocket. Budge estimated that the trace amounts were less than one milligram. 
The cocaine was visible to the naked eye. Budge did not weigh the cocaine.

 The State argues that proof that appellant possessed any cocaine is sufficient to
support the trial court's finding of guilt. As support for its argument, the State cites Thomas v.
State, 807 S.W.2d 786 (Tex. App. 1991, pet. granted) for the proposition that if the amount of
the substance is visible, it is sufficient to prove it was knowingly possessed. If Thomas stood for
this proposition, it would certainly provide support for the State's argument. However, Thomas
held that if the substance can be seen and measured, it is sufficient to establish that the defendant
knew it was a controlled substance. Thomas, 807 S.W.2d at 789. Thomas does not expressly
require that the measurable amount be measured, but in Thomas, the chemist did measure the
substance and could testify to its exact weight. Here, Budge did not specifically testify that the
amount was measurable. He stated that he did not attempt to measure it, because it was his
laboratory's policy not to report amounts less than one milligram. (4) 

 In Coleman v. State, 545 S.W.2d 831, 835 (Tex. Crim. App. 1977), the accused
was charged with possession of cocaine found inside a vial seized from his car. The chemist in
Coleman testified that 1/280,000 of an ounce of cocaine is weighable. The chemist estimated that
the amount of cocaine he recovered from the vial, and tested, was no more than 5/28,000 of an
ounce and maybe as little as 1/28,000 of an ounce. The trace amount involved in Coleman was
not weighable, however, because it could not be removed from the vial. The court of criminal
appeals found the unweighed amount insufficient to show that the cocaine was knowingly
possessed. See Coleman, 545 S.W.2d at 835. 

 Budge did not specify how much less than one milligram the cocaine found on the
razor blades might be. Since it is possible that Budge's estimate could include less than 1/10th
of a milligram, which is less than 1/280,000 of an ounce of cocaine, it cannot be inferred from
Budge's testimony that the cocaine on the razor blades was weighable. We decline to hold that
the cocaine found on the razor blades is sufficient, by itself, to support the finding of guilt. 

2. Cocaine Found on the Loading Dock


 In a circumstantial evidence case, when an accused is charged with unlawful
possession of a controlled substance, mere presence at the place where the narcotics are being
used or possessed is not enough when others are present. To show possession, the State must
prove two elements: (1) that the defendant exercised actual care, custody, control, or management
over the contraband; and (2) that he knew the matter possessed to be contraband. McGoldrick,
682 S.W.2d at 578. Therefore, there must be additional independent facts and circumstances
which affirmataively link the accused to the contraband in such a manner that it can be concluded
he had knowledge of the contraband as well as control over it. Control may be shown by actual
or constructive possession, and knowledge must always be inferred to some extent, in the absence
of an admission by the accused. Id. The circumstantial evidence must exclude every reasonable
hypothesis other than the appellant's guilt. Trejo v. State, 766 S.W.2d 381, 383 (Tex. App. 1989,
no pet.). Each case must be viewed on its own facts for evidence of sufficient affirmative links
in a particular case. Humason v. State, 728 S.W.2d 363, 367, n.12, (Tex. Crim. App. 1987).

a. Care, Custody, Control, or Management


 We believe a rational trier of fact might infer that appellant exercised the requisite
element of care, custody, control, or management of the cocaine found on the loading dock,
beyond a reasonable doubt, from the aggregate logical force of the following factors: (1) a
confidential informant of proven reliability told Moseley that appellant was in possession of
cocaine inside two matchboxes; (5) (2) when stopped, appellant possessed a plastic bag containing
seven Blue Diamond matchboxes; (3) the plastic bag contained a wrapper for the Diamond-brand
matchboxes; (4) appellant had two more Blue Diamond-brand matchboxes in his shirt pocket; (5)
one of the matchboxes found in appellant's shirt pocket contained three single-edged razor blades,
on which were found traces of cocaine; (6) the Blue Diamond-brand matchbox found on the
loading dock was identical in appearance to the other matchboxes found in appellant's possession;
(7) the matchbox found on the loading dock was within ten feet of where appellant had been sitting
when the officers approached; (8) consistent with the informant's tip, the matchbox found on the
loading dock was the second matchbox found to contain cocaine; (9) the informant indicated that
only one person, appellant, would possess cocaine; (10) the informant never suggested that Little
Bit possessed any cocaine.

 The logical force of these factors would support a rational trier of fact in
concluding beyond a reasonable doubt that appellant, who had actual possession of nine Blue
Diamond matchboxes and their wrapper, also exercised control and custody of the identical Blue
Diamond matchbox found nearby on the loading dock. Based on Moseley's testimony that
suspects discard items of contraband when approached, the jury could infer that even though the
officers did not actually see appellant do so, he discarded the matchbox containing cocaine rocks
when he saw the unmarked police car approaching. 

b. Knowledge


 We believe a rational trier of fact might also infer the element of guilty knowledge,
that is that appellant knew of the presence of the forbidden substance and its forbidden nature,
from the above factors. Based on the traces of cocaine on the blades, a jury could reasonably
conclude that the razor blades were drug paraphernalia related to the use of cocaine and were in
fact used by appellant for that purpose. This, coupled with the factors showing appellant
exercised custody and control of the matchbox containing cocaine rocks, and the reasonable
inference that he discarded it when the unmarked police car approached, is sufficient to show
appellant's knowledge of the cocaine's presence and its forbidden nature. 

 The factors we have listed, taken together, have logical force in establishing both
of the essential elements of the offense and in eliminating exculpatory hypotheses. Appellant's
second point of error is overruled.

 The judgment of conviction is affirmed.



[Before Chief Justice Carroll, Justices Aboussie and B. A. Smith]

Affirmed

Filed:  February 19, 1992

[Do Not Publish]
1.   We will refer to the matchbox containing the razor blades as Exhibit 10 in the remainder
of our opinion.
2. This holding in Carlsen was prospectively overruled in Geesa v. State, No. 290-90 (Tex.
Crim. App., Nov. 6, 1991). Carlsen continues to apply to cases tried before November 6, 1991.
3. Moseley testified that he had worked with the informant in the past and found his information
to be reliable and credible. He further testified that the informant was familiar with crack cocaine
and could identify it. 
4. One milligram is less than 1/28,000 of an ounce: 

 

 1/28,000 of an ounce = 0.00101247 gr. = 1.01247 mg.

 5/28,000 of an ounce = 0.00506294 gr. = 5.06294 mg.


Thomas, 807 S.W.2d at 789.
5.   There being no hearsay objection at trial, we shall consider the probative value of the
testimony regarding the information received from the informant. Tex. R. Crim. Evid. Ann. 802
(Pamph. 1991).