Juan Domingo ORTEGA, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–91–00235–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1993.

---

Maggie McBride, Houston, for appellant.

John B. Holmes, Pamela Fulbright, Houston, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

The trial court found appellant, Juan Domingo Ortega, guilty of possession of cocaine, a controlled substance, in an amount less than 28 grams. Finding the enhancement paragraph true, the court assessed punishment at 12–years confinement. We affirm.

■ In his first point of error, appellant asserts the trial court erred in denying his motion to suppress because the cocaine was seized after a pretext traffic stop. Appellant urges that the pretext arrest violated his rights afforded by the fourth amendment of the United States Constitution.

At a suppression hearing, the trial court is the sole finder of fact. *Walker v. State,* 588 S.W.2d 920, 924 (Tex.Crim.App.1979). The trial court's ruling will not be set aside absent a showing of abuse of discretion. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim. App.1985). The evidence is to be viewed in the light most favorable to the trial court's ruling on the motion. *Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App.1986). If supported by evidence, the ruling will not be disturbed on appeal. *Ackenback v. State,* 794 S.W.2d 567, 570 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

Houston Police Officer M.R. Burdick testified that while on routine patrol in an area known to be "very high in auto thefts," he noticed that appellant, an Hispanic male, was driving a recent-model car. Before approaching the car, Burdick ran the license plate through the computer and found no stolen vehicle report. Burdick drove next to appellant's vehicle and shined his light into the car to determine whether there were keys in the ignition. In doing so, Burdick noticed that appellant was driving without wearing his seat belt. Burdick and his partner, B.K. Gill, stopped appellant for that offense. Burdick testified that he stops anyone he sees who is driving without a seat belt.

After stopping appellant, the officers asked for his driver's license and requested that he step out of the car. Burdick testified that he always asks a suspect to step out of the car if he is going to check for warrants. Burdick did a "quick officer safety pat-down for weapons" before seating appellant in the back seat of the patrol car.

Appellant was driving a car registered to a rental car company, but he did not have any paperwork authorizing his use. Appellant told Burdick that his wife or his sister had rented the car. Once appellant was in the patrol car, Burdick ran his name and his wife's name through several law enforcement databases, looking for outstanding warrants. The officers twice checked the National Criminal Information Management System (NCIC), the Texas Criminal Information Management System (TCIC), the city of Houston warrants, and another database that catches warrants not yet entered in NCIC or TCIC.

One of the NCIC searches came back positive for someone with the same name, birthdate, and general description as the appellant. Burdick asked the appellant for his social security number to determine whether appellant was the same person identified in the database. The domelight in the car did not illuminate the backseat, and appellant seemed to have difficulty retrieving his social security card in the dark. Burdick shined his flashlight into the backseat to assist appellant.

Burdick soon got the impression that appellant was trying to conceal something; then he thought he saw the appellant drop something onto the floorboard of the car. Burdick became concerned that appellant was carrying a razor. He asked appellant for his wallet and retrieved appellant's social security card. The officers kept the wallet "for safekeeping." Burdick repeated the computer search with the appellant's social security number and initiated a Houston Police Department (HPD) rap sheet check. He received the "all clear" and prepared to release the appellant.

As appellant stepped out, Burdick visually scanned the floorboard where the appellant had been seated. According to patrol procedures, this type of search is conducted every time a person is released from a squad car. Burdick found a small square plastic baggy containing a white powder that he believed to be narcotics. He arrested appellant, reseated him in the patrol car, and then conducted an inventory search of the vehicle appellant had been driving. He recovered several oth-

er "items of narcotics paraphernalia"—a dirty syringe, a spoon, a metal pipe, and two pieces of metal commonly used to smoke crack cocaine.

Burdick then ran appellant's information through HPD warrants. On the last check, the officers discovered that appellant had a rap sheet with two convictions and was on parole.

At trial, the defense called Jimmy Shaw, who works in the communication division of the HPD. He produced computer records from the dispatch office which showed that Burdick conducted the following transactions the night of the arrest:

12:07 a.m. Unit makes first link with computer for the day.

12:15 a.m. The officers started a check for license, holding Terry Royal Jackson.

12:19 a.m. The officers ended their check for warrants on Terry Royal Jackson.

12:36 a.m. Officers enter license number 068WUS, the license to the car appellant was driving; computer listed rental company as owner of vehicle.

12:37 a.m. Officer asked for a rap sheet on the appellant.

12:40 a.m. Officers request warrant information on the appellant.

12:41 a.m. Response to search for warrants was that the appellant was clear.

12:50 a.m. The appellant was clear of county warrants.

12:55 a.m. The appellant was clear from NCIC.

12:57 a.m. Officers asked for warrant information on the appellant's wife.

12:59 a.m. Rap sheet information that the appellant has Houston rap and identifies the arrests.

1:06 a.m. TCIC returns information that the appellant had been convicted for robbery and burglary.

1:13 a.m. Message to dispatcher: "On view narcotics investigation at 4200 Irvington."

1:16 a.m. Message to dispatcher: "Request a tow truck."

The officers had appellant in the back of the squad car for at least 26 minutes (from 12:40 a.m. until 1:06 a.m.) while they searched through databases for warrants on appellant and his wife.

The defense also called Terry Royal Jackson, an individual the officers had stopped earlier that evening. Mr. Jackson testified that he was stopped about 12:45 a.m., after he had left his grandmother's house.[1] He said that the officers asked him to get out of his car, asked for his driver's license, and put him in the back of the patrol car. After five or ten minutes in the patrol car, the officer wrote him a ticket, and he left.

Appellant testified that the officers' first question was, "Where did you get [the car]?" He claimed that the officers said nothing about the seat belt and did not issue him a ticket for failure to wear a seat belt. They put him in the back of the patrol car and began running computer checks on him. When one of the checks came back positive, the officers asked him for his social security number. When he got his wallet out, the officer took it from him and began going through it.

Appellant represented to the officers that he had never been arrested. He testified that when the computer reported that he was on parole, one of the officers called him a liar. They made him get out of the car and started searching him again. The officer found a Q–Tip in his pocket and asked him what it was for. He responded that it was to clean his ears, and the officer called him a "smart ass." He testified that they threw him against the trunk of the car. One of the officers stuck his head in the patrol car and immediately retrieved a little bag, whereupon he asked the other officer, "Do you think we can get anything on him with this?" The officers handcuffed appellant and put him back in the patrol car.

Relying on *Black v. State*, 739 S.W.2d 240, 245 (Tex.Crim.App.1987), appellant contends the cocaine was discovered as a result of a pretext stop[2] and illegal detention under the fourth amendment of the United States Constitution.[3] Appellant argues the officers used the traffic violation as an illegal pretext to confirm or dispel their subjective belief that the car was stolen.

*Black's* disapproval of pretext stops was overruled by the Texas Court of Criminal in *Garcia v. State*, 827 S.W.2d 937 (Tex.Crim. App.1992). In its place, the court adopted the following rule:

As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation*, regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention. Thus, the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense; an officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual.

*Id.* at 944.

In light of *Garcia*, we reject appellant's argument that the evidence should have been suppressed because the subjective intent of the police in arresting was improper. Instead, we determine whether appellant committed a cognizable offense. *Garcia*, 827 S.W.2d at 944. If appellant did commit an offense, his stop and detention were reasonable, notwithstanding the officer's other motives, if any, in stopping and detaining him.

---

1. We leave the reconciliation of the conflict in timing between Mr. Jackson's 12:45 a.m. stop and Mr. Shaw's 12:07 a.m. dispatch in the capable hands of the jury.

2. A "pretext arrest" is an "objectively" valid stop for an allegedly improper reason. *Garcia v. State*, 827 S.W.2d 937, 939–40 (Tex.Crim.App. 1992). "In other words, a pretext arrest occurs when an individual is validly stopped or arrested for one offense only because law enforcement officials desire to investigate that individual for a different offense—i.e., an offense for which they do not have valid legal grounds to stop or arrest." *Id.*

3. Because appellant provides no argument or authority about possible protection provided by the Texas Constitution, we decline to address pretext stops under the Texas Constitution. *Heitman v. State*, 815 S.W.2d 681, 690–91 n. 23 (Tex.Crim.App.1991); *see* Tex.R.App.P. 74(f).

*Id.* at 944–45. Police officers' routine duties include enforcement of the traffic laws, and a violation of those traffic laws is sufficient authority to stop an offending driver. *Armitage v. State*, 637 S.W.2d 936, 939 (Tex.Crim. App.1982); *Santos v. State*, 822 S.W.2d 338, 341 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

We find that the trial court reasonably could have believed appellant was not wearing his seat belt, giving the officers an objective reason to stop him. Tex.Rev.Civ.Stat. art. 6701d, § 107C(b) (Vernon Supp.1993); Tex.Rev.Civ.Stat.Ann. art. 6701d, § 153 (Vernon 1977); *see Garcia*, 827 S.W.2d at 944. The officers were free to enforce the seat belt law and detain appellant for its violation. The trial court did not err in overruling appellant's motion to suppress.

We overrule appellant's point of error one.

■ In point of error two, appellant argues that the evidence is factually insufficient to support his conviction. In reviewing factual sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1974); *Manuel v. State*, 782 S.W.2d 335, 336 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). A conviction cannot be sustained if the evidence leaves any reasonable doubt about the guilt of the accused. *Jackson*, 443 U.S. at 317–18, 99 S.Ct. at 2788. Proof that amounts to only a strong suspicion or a mere probability is insufficient to support a conviction. *Moore v. State*, 640 S.W.2d 300, 302 (Tex.Crim.App.1982). To establish the unlawful possession of a controlled substance, the State must prove: (1) the accused exercised care, custody, control, and management over the contraband; and (2) the accused knew that the matter possessed was contraband. *Manuel*, 782 S.W.2d at 336.

■ First, appellant contends that there was insufficient evidence affirmatively linking him with the cocaine. We disagree. Burdick stated that he believed the appellant was trying to conceal something and that he

had seen the appellant drop something on the floorboard. In addition, Burdick testified that it is standard police procedure to visually scan the rear passenger area after holding someone in the rear seat. Viewing the testimony in the light most favorable to the verdict, there was sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that the cocaine belonged to appellant.

■ Appellant also argues that the amount of recovered cocaine was "too small to support a conviction." If the controlled substance can be seen and measured, the amount is sufficient to establish that the appellant knew it was a controlled substance. *Mayes v. State*, 831 S.W.2d 5, 6 (Tex.App.—Houston [1st Dist.] 1992, no pet.) (0.2 milligrams of cocaine was sufficient to sustain a conviction); *see also Kent v. State*, 562 S.W.2d 855, 856 (Tex.Crim.App.1978) (3.2 milligrams); *Tomlin v. State*, 338 S.W.2d 735, 737 (Tex.Crim.App.1960) (1.7 milligrams); *Jarrett v. State*, 818 S.W.2d 847, 848 (Tex.App.—Houston [1st Dist.] 1991, no pet.) (2.0 milligrams); *Thomas v. State*, 807 S.W.2d 786, 789 (Tex.App.—Houston [1st Dist.] 1991, pet. dism'd) (0.8 milligrams of cocaine); *Lavigne v. State*, 782 S.W.2d 253, 256 (Tex.App.—Houston [1st Dist.]), *aff'd*, 803 S.W.2d 302 (Tex.Crim.App.1990) (3.9 milligrams); *Manuel v. State*, 782 S.W.2d 335, 337 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd) (2.2 milligrams); *Alejandro v. State*, 725 S.W.2d 510, 515 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (three syringes contained 0.3 milligrams of cocaine); *Simpson v. State*, 668 S.W.2d 915, 918 (Tex.App.—Houston [1st Dist.] 1984, no pet.) (9.5 milligrams).

■ In this case, there was evidence that the recovered powder contained 1.1 milligrams of pure cocaine, was visible to the naked eye, and was susceptible to testing. The chemist testified that to test the substance, he had to wash the baggy to get enough liquid to test, thereby destroying the evidence. We hold that under current Texas precedent, the quantity of cocaine was sufficient to convict appellant of unlawful possession. The testimony that it was seen and measured sufficed to meet the evidentiary threshold mandated by present authority.

We overrule appellant's point of error two.

We affirm the judgment of the trial court.

O'CONNOR, J., concurring and dissenting.

O'CONNOR, Justice, concurring and dissenting.

I dissent from the majority's resolution of point of error two.

Under the point of error two, the appellant argues the amount of recovered cocaine was "too small to support a conviction." The police recovered 1.1 milligrams of pure cocaine, which was visible to the naked eye, and was susceptible to testing. The chemist testified that to test the substance, he had to wash the baggy to get enough liquid, and the test destroyed the evidence. In *Coleman v. State*, 545 S.W.2d 831, 835 (Tex.Crim.App. 1977), the court held 5.06 milligrams of cocaine was not enough to support a conviction.[1] The amount recovered in this case was less than the amount in *Coleman*.

I would sustain the appellant's point of error two and instruct the trial court to render a judgment of acquittal.

1. In *Coleman*, the defendant was found with 5/28,000 of an ounce, which is the equivalent of 5.06 milligrams. The formula is 5/28,000 oz. = .000178571 oz.; .000178571 oz./1 × 1 mg./ .00003527 oz. = 5.06 mg.