**Affirmed and Opinion Filed April 22, 2024**



In The

## Court of Appeals
### Fifth District of Texas at Dallas

_____

### No. 05-23-00228-CR

_____

### EDUARDO PALOMO MEDINA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82184-2022**

## MEMORANDUM OPINION

Before Justices Garcia, Breedlove, and Kennedy
Opinion by Justice Breedlove

A jury found appellant Eduardo Palomo Medina guilty of continuous sexual abuse of a child. TEX. PENAL CODE ANN. § 21.02(b). The trial court sentenced appellant to 30 years' imprisonment. In three issues, appellant contends the trial court erred in the admission and the exclusion of certain evidence. Concluding that the trial court did not err, we affirm appellant's conviction.

### BACKGROUND

Appellant and M.R.'s mother lived together and were in a relationship when M.R. was twelve years old, and M.R. considered appellant to be her stepfather. When appellant first met M.R., he treated her nicely and would take her to the park or the

mall. But around the time Mother had gallbladder surgery and was unable to be intimate, appellant began to touch M.R. He started out by touching her bottom when he carried her over his shoulder, and then began to abuse her at home on the couches when Mother was at work. M.R. testified that he would force her to kiss him by pulling her hair. He would get on top of M.R. and force her to touch his penis under his underwear. She testified that it felt wet, cold, weird, and soft.[1] She testified that appellant would pull her clothes down to her knees and put his finger inside her vagina, and it hurt. She also testified that appellant would ask her whether she wanted "Round 2," "like if I wanted—wanted to do it again, you know," and she would refuse.

Appellant also showed M.R. inappropriate pictures on his phone that depicted some of M.R.'s favorite Disney or TV characters in suggestive or sexualized poses. M.R. explained that other pictures appellant showed her depicted "people having sexual stuff." She testified that the pictures made her uncomfortable. She also testified that appellant had undressed in front of her and looked at her while he took off his clothes, and it made her "[u]ncomfortable and afraid that he would do something."

M.R. told a friend at school about the abuse, who encouraged her to tell the principal. M.R. told the school staff enough for them to contact law enforcement,

---

[1] M.R.'s mother later testified that appellant has erectile dysfunction. In her forensic interview, M.R. also used the word "gooey" in her description.

and M.R. was forensically interviewed the same day. Both during her report to the school staff and her forensic interview, M.R. cried and was distraught. M.R. gave general and sensory details about the abuse.

Appellant was indicted for continuous sexual abuse of a child under 14, *see* TEX. PENAL CODE ANN. § 21.02(b), and the case proceeded to a jury trial. The jury heard testimony from M.R., M.R.'s school principal, a responding police officer, an interviewer from the Children's Advocacy Center, M.R.'s mother, and the police detective who investigated the case. The jury found appellant guilty, and the trial court sentenced appellant to 30 years' imprisonment. This appeal followed.

## DISCUSSION

In three issues, appellant argues the trial court erred by (1) admitting State's Exhibits 9–12, (2) sustaining the State's relevance objection to the defense's questioning of M.R., and (3) excluding evidence of M.R.'s prior "outcry."

### 1. Admission of State's Exhibits 9-12

In his first issue, appellant contends the trial court erred by admitting images obtained from a "dump" of his cell phone. He argues the exhibits should have been excluded under rule 403 of the Texas Rules of Evidence. Under rule 403, the court may exclude otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or "needlessly presenting cumulative evidence." TEX. R. EVID. 403.

We review the trial court's decision to admit or exclude evidence for abuse of discretion. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). "[A]n appellate court will uphold a trial court's ruling on admissibility so long as it is within the 'zone of reasonable disagreement.'" *Id.* (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)). This is so because trial courts are usually in the best position to make the determination as to whether certain evidence should be admitted or excluded. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

This Court will reverse a trial court's determination under rule 403 "rarely and only after a clear abuse of discretion." *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022). We measure the trial court's ruling "against the relevant criteria by which a Rule 403 decision is made." *Id.* When a trial court considers the admissibility of evidence under rule 403, it conducts a balancing test:

> In summary, a trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (footnote omitted).

–4–

Appellant argues that all of the *Gigliobianco* factors weigh against admission of the exhibits. He contends that he was not charged with any criminal offenses involving child pornography. He argues that the exhibits have no bearing on the State's burden of proving the essential elements of the charged offense of continuous sexual abuse of a child, and accordingly are irrelevant. He also contends the exhibits' admission unfairly placed a burden on him to defend against extraneous matters, and posed a danger for the jury to decide the case on those extraneous matters. He argues that with the admission of the exhibits, the State could "argue a highly prejudicial claim that the defendant was sexualizing or grooming the child that is not supported by any other evidence." He contends the exhibits were inflammatory, "needlessly cumulative," and did not aid the jury in resolving the ultimate issue. He concludes that the exhibits' probative value was "significantly outweighed" by prejudice, and the admission was "harmful and had a negative influence on the jury's verdict," so that the trial court abused its discretion by failing to exclude the exhibits under rule 403.

The State responds that the trial court did not abuse its discretion in admitting the exhibits, arguing that the exhibits were "highly probative in that they corroborated M.R.'s testimony and were evidence that Appellant groomed her." The State also argues that "[i]t is unlikely the admission of the exhibits impressed the jury in some irrational way," the trial court's limiting instruction minimized any impermissible inference, and the time it took to develop the evidence was minimal.

In the alternative, the State argues that even if the trial court erred, the error did not affect appellant's substantial rights.

The State introduced evidence that M.R. told the forensic interviewer that appellant showed her animated images on his cell phone. The images were characters from some of her favorite shows, but the drawings displayed sexual acts. At trial, M.R. testified that appellant showed her photos of "some Disney characters, some of my favorite characters," and "there were two people having sexual stuff." She testified that the photos were on appellant's phone. M.R. identified Exhibits 9 through 12, testifying that she recognized them as photos appellant showed her. She testified that the photos were animated, and that one of them showed a character from "Demon Slayer," one of her favorite shows.

The investigating police detective testified that the exhibits "depict images or cartoon images of females with—exposing—some of them exposing their breasts and showing them just in a very risqué sexual manner." The detective testified that M.R.'s description of the images corroborated M.R.'s statement:

> Q. Did the fact that those images were found on his phone mean anything to you during the course of your investigation?
>
> A. Yes, it did.
>
> Q. And what—what was that?
>
> A. Evidence based on what the child described, that [appellant] had shown her and that she saw via reflection in their apartment complex window that he was accessing on his cell phone; and she mentioned some of these images were saved or—or were shown.

Q. Was she pretty specific, like was it specific that it was animated images?

A. Yes. It might—and she called them, if I'm not mistaken, cartoon-like characters, drawings that depicted—what she was calling the private parts [is how] she described it, I think after—after the forensic interviewer clarified it as the male sexual organ, the female sexual organ, and the breasts, as well.

Q. So the fact that these images were located on his phone, was that important corroboration in your mind as the detective working on the case?

A. Absolutely.

Q. And why is that?

A. Well, in my opinion it gave credit to the child's testimony or statement.

The forensic interviewer testified similarly, that in her experience, "that kind of behavior" is "consistent with grooming," which she defined as "a way that a perpetrator breaks down barriers to gain access to offend on a child, or on anybody."

We conclude, as the trial court did, that the evidence was highly probative. The evidence was not only that appellant had the images on his phone, but also that the images depicted M.R.'s favorite characters and that appellant showed the images to M.R. Testimony about the images did not "consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco*, 210 S.W.3d at 641–42. M.R.'s testimony identifying the exhibits and explaining that appellant showed them to her took approximately five pages of a two-volume trial record, and the additional testimony by the forensic interviewer and police detective quoted above was similarly brief.

In the charge, the trial court instructed the jury that they could not consider testimony about other offenses for any purpose unless they found and believed beyond a reasonable doubt that the defendant committed the other offenses, if any, and even then could only consider them in determining motive, opportunity, intent, preparation, plan, absence of mistake, or lack of accident in connection with the offense alleged in the indictment. The jury is presumed to have understood and followed the court's charge. *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012).

Having weighed the *Gigliobianco* factors, 210 S.W.3d at 641–42, we conclude that the probative value of Exhibits 9–12 was not "substantially outweighed" by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or presenting cumulative evidence." TEX. R. EVID. 403. We overrule appellant's first issue.

### 2.     Cross-examination of complainant

Appellant next complains that the trial court erred by sustaining the State's relevance objection to the defense's questioning of M.R. about a prior incident involving her uncle. A trial court's ruling to admit or exclude evidence is reviewed on appeal for abuse of discretion. *Inthalangsy*, 634 S.W.3d at 754. An abuse of discretion occurs if the trial court's decision lies outside the zone of reasonable disagreement. *Id*. The test for relevance is whether the evidence "has any tendency

to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." TEX. R. EVID. 401.

Outside the jury's presence, appellant's counsel elicited testimony from M.R., appellant's sister, and M.R.'s mother about the incident. Previously on cross-examination before the jury, M.R. had testified she knew that her cousin had been sexually abused by M.R.'s uncle. She then testified that she thought "my uncle tried to, like, touch me." In further questioning out of the jury's presence, M.R. testified that when she and her sisters were watching TV, her uncle "got up, like, with them, and then he was just on top of me, basically kind of like tickling me" on her stomach. She explained that it only happened once, when she was about five, a "long time" before the incidents with appellant. She testified that "it wasn't, like, exactly the same thing" as with appellant, and that her uncle "never touched [her] private parts," never "ha[d] her touch his private parts," and did not kiss her "or anything like that." The court sustained the State's relevance objection to M.R.'s testifying on the subject.

The defense then offered the testimony of appellant's sister, again out of the jury's presence. She testified that at a family party, there was a conversation about one family member, a young girl, being raped by another family member. According to the sister, "[M.R.] overheard the conversation and she said, oh, yes, he touched me, too." Appellant's sister testified that M.R.'s mother told M.R., "No, don't say that. That's not true. He didn't do that." But M.R. said "Yes, he did." Defense

counsel argued that the testimony affected the credibility of M.R. and her mother, both of whom had already testified before the jury.

The court excluded the evidence after hearing additional testimony from M.R. and her mother. M.R.'s mother testified she did not have such a conversation with appellant's sister, and that M.R. had said only that the uncle asked her to sit next to him. M.R. testified that the conversation with her mother occurred "in private," not at a party, and clarified that when she said her uncle "touched" her, she was "talking about tickling," "[n]ot on my private parts." The State argued that there were no prior inconsistent statements by M.R. that were at issue, and that the admission of the evidence would be confusing and misleading for the jury, "especially [because] we have established now from both Mom and [M.R.] that there has not been an allegation of sexual abuse" against the uncle.

Appellant argues that the line of questioning of M.R. "is relevant as to her outcry." He contends that M.R.'s credibility was an important factor in the jury's determination of the issues, and the trial court "should have given more latitude to the defense to develop bias, motive, ill will, or animus with regard to M.R.'s allegation" against him. He argues that M.R.'s inability to remember and recount outcries against both the uncle and appellant "was certainly an important factor for the jury in judging [M.R.]'s credibility and trustworthiness." He concludes that the defense was harmed by the trial court's erroneous ruling. The State responds that the trial court did not abuse its discretion in sustaining the objection because the

testimony did not make a fact of consequence more or less probable, did not constitute sexual abuse, and was not proven to be false. *See* TEX. R. EVID. 401.

We conclude the trial court did not abuse its discretion by sustaining the State's objection to the admission of the testimony. *See Inthalangsy*, 634 S.W.3d at 754 (abuse of discretion occurs when the trial court's decision lies outside the zone of reasonable disagreement). The proffered evidence did not have any tendency to make any fact of consequence more or less probable, TEX. R. EVID. 401, given that none of the testimony concerned sexual abuse or M.R.'s ability to recall incidences of sexual abuse. We overrule appellant's second issue.

### 3.     Presentation of a complete defense

In his third issue, appellant complains further about the trial court's exclusion of testimony regarding the alleged incident with the uncle. He contends the trial court impeded his right to present a complete defense under "the Due Process Clause of the Fourteenth Amendment and the Compulsory and Confrontation Clauses of the Sixth Amendment." *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

As we have discussed, after the State rested, appellant again sought the admission of evidence about prior abuse of M.R., offering testimony of appellant's sister, M.R., and M.R.'s mother. After appellant completed the proffer, the trial court ruled the testimony was not admissible. Appellant now argues that his "primary defense was based on exposing the credibility of [M.R.]'s outcry and allegations

against him through a prior false outcry that she made against an uncle." He argues that a complaining witness's motive or animus "is never an irrelevant inquiry and a defendant may show it through other witnesses," citing *Coleman v. State*, 545 S.W.2d 831, 833 (Tex. Crim. App. 1977).[2] He contends the evidence clearly showed a prior outcry by M.R. that M.R.'s mother did not believe, and accordingly, "the defense should have been able to present to the jury that [M.R.] has made a false outcry of abuse." He concludes that "[w]ithout this line of questioning, the defense was inhibited in presenting [its] theory that [M.R.] is prone to making false allegations," because the evidence was "important for the jury in assessing the validity and veracity of [M.R.]'s current outcry of abuse" against appellant. He argues that the error was harmful because the ruling denied him "the fundamental constitutional right to present a complete defense."

The Sixth Amendment right to confront witnesses includes the right to cross-examine them to attack their general credibility and to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). However, the right is not unqualified, and the trial court has wide discretion in limiting the scope and extent of cross-examination. *Id.* Ordinarily, evidentiary rules limiting the admissibility of evidence do not conflict with the Sixth Amendment. *Id.*

---

[2] We note that *Coleman* was decided prior to the promulgation of the Texas Rules of Evidence in 1985. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

Generally, a witness may be cross-examined "on any relevant matter, including credibility." TEX. R. EVID. 611(b). However, rule of evidence 608(b) bars cross-examination about specific instances of conduct, other than criminal convictions as provided in rule 609(a), for the purpose of attacking the witness's character for truthfulness. TEX. R. EVID. 608(b), 609(a). "Texas, unlike some jurisdictions, has not created a *per se* exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of the complainant's prior false allegations of abuse or molestation." *Hammer*, 296 S.W.3d at 564.

When applying the Sixth Amendment, courts have distinguished attacks on a witness's general credibility from attacks that reveal the witness's possible biases, prejudices, or ulterior motives that relate directly to the issues or people in the particular case. *Colter v. State*, No. 05-18-00016-CR, 2018 WL 6259040, at *4 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op., not designated for publication) (*citing Hammer*, 296 S.W.3d at 562–63, *and Terry v. State*, No. 05-12-00279-CR, 2013 WL 1838646, at *4 (Tex. App.—Dallas Mar. 26, 2013, pet. ref'd) (mem. op., not designated for publication)). The defendant does not have an absolute right to impeach a witness's general credibility, but the Sixth Amendment is offended if an evidentiary rule bars a defendant from cross-examining a witness about possible biases, prejudices, and motives to such an extent that he could not present a vital defensive theory. *Hammer*, 296 S.W.3d at 562–63; *Terry*, 2013 WL 1838646, at *4.

The State contends the trial court did not abuse its discretion. The State argues that the testimony was hearsay and was not admissible under the exception for statements of certain abuse victims. *See Bays v. State*, 396 S.W.3d 580, 585 (Tex. Crim. App. 2013) ("The outcry statute [TEX. CODE CRIM. PROC. ANN. art. 38.072] creates a hearsay exception for a child-complainant's out-of-court 'statements' that 'describe the alleged offense,' so long as those statements were made 'to the first [adult] person . . . to whom the child. . . made a statement about the offense.'"). As the State argues, there is no evidence that M.R. made an "outcry" against her uncle because there was no "alleged offense." Instead, M.R. testified:

> Q.     So everything that you talked about in this court yesterday when you were in here and you were talking about your uncle and the tickling, is that everything that happened with your uncle?
>
> A.     Yes, ma'am.
>
> Q.     So when you were talking about that he touched you, and when we're using the word "touch," are we talking about tickling?
>
> A.     Yes, ma'am.
>
> Q.     Are we talking about on your private parts or are we talking about not on your private parts?
>
> A.     Not on my private parts.

Neither M.R.'s mother nor appellant's sister offered any testimony to the contrary on this point.

We conclude the trial court did not abuse its discretion by excluding the proffered evidence. Appellant argues that his primary defense was based on exposing the credibility of [M.R.]'s outcry and allegations against him," by evidence

of "a prior false outcry that she made against [the] uncle." But rule of evidence 608(b) prohibits the admission of evidence offered "to prove specific instances of the witness's conduct in order to attack . . . the witness's character for truthfulness." TEX. R. EVID. 608(b). As we explained in *Colter*, "*Hammer* makes clear that the Confrontation Clause does not compel the admission of prior false accusations offered simply to attack a complainant's general credibility." *Colter*, 2018 WL 6259040, at *5. Nor did the evidence support any defensive theory that M.R. was biased against appellant or had any motive to accuse him, unlike the complainant in *Hammer*. *See Hammer*, 296 S.W.3d at 567.[3]

Here, appellant was able to attack M.R.'s credibility and by doing so, presented the substance of his defense. His counsel cross-examined M.R. about the timing and details of the abuse. His counsel argued in closing that M.R. was a "very suggestible 13-year-old child" who "talk[ed] about a lot of different things that happened," but was "very suggestible in when that happened, how it happened, under what circumstances did it happen." Counsel also argued that M.R. described the abuse by using the term "sexually abusing me," "a very adult way to describe what was happening." And counsel discussed how no one noticed any change in

---

[3] In *Hammer*, the court held it was error to exclude evidence that the alleged victim, on a prior occasion, falsely accused others of rape to conceal she had a consensual sexual relationship with her boyfriend, a boy of whom her father did not approve. The court concluded that under these circumstances, her past sexual history was logically connected to her motive to falsely accuse her father of sexual molestation. *See Hammer*, 296 S.W.3d at 567–69.

M.R.'s behavior when the alleged abuse would have been happening. The jury could consider all of these matters in reaching its verdict.

We conclude the trial court's ruling excluding the evidence did not fall outside the zone of reasonable disagreement. *See Inthalangsy*, 634 S.W.3d at 754. We overrule appellant's third issue.

## CONCLUSION

The trial court's judgment is affirmed.

/Maricela Breedlove/

230228f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDUARDO PALOMO MEDINA,
Appellant

No. 05-23-00228-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 401-82184-
2022.
Opinion delivered by Justice
Breedlove. Justices Garcia and
Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of April, 2024.